DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jana Fuller ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that overruled objections and adopted the magistrate's decision to place her minor child in the legal custody of the child's father, Matthew G. ("Father"). This Court affirms.
 I. {¶ 2} Mother and Father are the natural parents of B.G., born May 12, 2007. At the time B.G. was born, Mother and Father were living together in the home of Father's parents. A domestic dispute arose between the two on June 3, 2007, however, which marked the end of the couple's relationship and was the impetus for Summit County Children Services Board ("CSB") filing this case. The incident led to criminal charges being filed against Mother that were being resolved through the mental health court diversion program at Akron Municipal Court. *Page 2 
 {¶ 3} On June 8, 2007, CSB filed a complaint alleging that B.G. was an abused, neglected, dependent, and endangered child. The allegations in the complaint focused solely on Mother and concerns about her mental health. The complaint alleged that the police had been called to the home because Mother was hysterical and threatening to harm herself and others. As was recommended by CSB's complaint, B.G. was placed in the emergency temporary custody of Father, and Mother was allowed supervised visitation.
 {¶ 4} On July 23, 2007, B.G. was adjudicated an abused and dependent child because Mother had placed the child at substantial risk of harm by threatening to strike Father and taking substantial steps to do so while he was holding B.G. in his arms. Mother later stipulated that it was in the best interest of B.G. to remain in the temporary custody of Father while she worked on the goals of her case plan. Mother's visitation with B.G. was expanded but it remained supervised.
 {¶ 5} Each parent moved for legal custody of B.G. and a hearing on the motions was held before a magistrate. The magistrate determined that it was in the best interest of B.G. to be placed in the legal custody of Father, with expanded visitation rights for Mother. Mother filed timely objections to the magistrate's decision, which were overruled by the trial court. The trial court placed B.G. in the legal custody of Father and ordered that Mother be granted visitation rights. Mother appeals and raises two assignments of error, which will be addressed together because she argues them jointly.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT'S DECISION DENYING MOTHER'S MOTION FOR CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW AND/OR AN ABUSE OF DISCRETION AND WAS NOT IN THE MINOR CHILD'S BEST INTEREST." *Page 3 
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION GRANTING FATHER'S MOTION FOR CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO LAW AND/OR AN ABUSE OF DISCRETION AND WAS NOT IN THE MINOR CHILD'S BEST INTEREST."
 {¶ 6} Mother asserts that the trial court erred in placing B.G. in the legal custody of Father and that the court should have instead placed B.G. in her legal custody. This Court must emphasize that the legal custody motions were heard by a magistrate, who decided that B.G. should be placed in the legal custody of Father. Mother has appealed from the trial court's judgment that overruled her objections and adopted the magistrate's decision. She maintains that this Court must review the weight of the evidence that supported the trial court's legal custody decision, but that is not the appropriate standard of review.
 {¶ 7} Although the trial court must conduct an independent review of objections to a magistrate's decision, see Civ. R. 53(D)(4)(d), this Court's standard of review is more deferential. This Court reviews the trial court's ruling on objections to a magistrate's decision for an abuse of discretion. Mealey v. Mealey (May 8, 1996), 9th Dist. No. 95CA0093. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Furthermore, "[a]ny claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." Love v. Love, 9th Dist. No. 22976,2006-Ohio-3559, at ¶ 15.
 {¶ 8} Although Mother's argument is based on an inappropriate standard of review, she also implicitly maintains that the trial court abused its discretion by applying the wrong best interest test in evaluating the motions for legal custody. The trial court noted that the only best interest criteria found in R.C. Chapter 2151 are set forth in R.C. 2151.414(D), the best interest *Page 4 
test for permanent custody decisions. Mother maintains that the trial court applied too narrow a test and should have also considered the best interest factors set forth in R.C. 3109.04(F)(1).
 {¶ 9} Mother has failed to demonstrate an abuse of discretion by the trial court in applying the best interest test set forth in R.C. 2151.414(D). She cites no case law to support her position that the trial court applied the wrong test and this Court has held that the best interest test set forth in R.C. 2151.414(D), although it relates to permanent custody, "provide[s] guidance" in legal custody determinations. See In re T.A., 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17. The trial court's disposition of legal custody is not guided by clear statutory requirements, for the Ohio Revised Code fails to set forth any specific test for ruling on legal custody motions. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." In re N.P., 9th Dist. No. 21707,2004-Ohio-110, at ¶ 23, citing In re Fulton, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, at ¶ 11.
 {¶ 10} The trial court purported to rely on the best interest test set forth in R.C. 2151.414. The best interest factors relevant to this case are:
 "(1) The interaction and interrelationship of the child with the child's parents * * * [and] relatives * * *;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; [and]
 "(3) The custodial history of the child * * *." R.C. 2151.414(D).
 {¶ 11} Mother does make a valid point that a more expansive best interest test may have been appropriate in this case. There was no motion for permanent custody before the court, but only the parents' competing motions for legal custody. Because the best interest factors set forth in R.C. 2151.414(D) are tailored to address whether parental rights should be terminated, they do not fully address all of the best interest considerations that would be relevant to this situation. *Page 5 
The juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact `residual parental rights, privileges, and responsibilities.'"In re Shepherd (Mar. 26, 2001), 4th Dist. No. 00CA12, quoting R.C. 2151.011(B)(19). Consideration of additional best interest factors would have been relevant to addressing how to best allocate custody and visitation rights between the parents, given a prior adjudication of dependency and abuse.
 {¶ 12} The additional relevant best interest factors set forth in R.C. 3109.04(F)(1) include:
 "(d) The child's adjustment to the child's home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 * * *
 "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; * * * whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense * * *[.]"
 {¶ 13} Even if this Court were to agree that the trial court should have considered the additional best interest factors set forth in R.C. 3109.04, the record reveals that the trial judge did consider some of these factors, even though he did not explicitly state so in the judgment. Moreover, the magistrate explicitly did consider these R.C. 3109.04(F)(1) factors. As will be *Page 6 
explained below, these additional best interest factors only provided additional support for the trial court's decision to place B.G. in the legal custody of Father.
 {¶ 14} Regarding B.G.'s adjustment to her home, both the magistrate and the trial judge considered that B.G. was adjusted to Father's home and was doing well there. B.G. had been residing with Father and his parents since her birth and had lived there without Mother for the seven months prior to the hearing. The CSB caseworker testified that Father was meeting all of the needs of B.G. and that Father's parents provided care for her while Father worked. The caseworker further explained that B.G. was developmentally on target and she appeared to be well cared for. The caseworker had made regular announced and unannounced visits to Father's home and always found the home and B.G.'s care to be appropriate.
 {¶ 15} Although there was no evidence that either parent or B.G. had any issues with their physical health, there was evidence that Mother had mental health issues that she had been addressing throughout this case. There was disputed evidence about Mother's exact mental health diagnosis and the extent to which it impacted her ability to care for B.G. There was substantial evidence, however, that Mother had been diagnosed with a significant mental health disorder, that she was required to attend counseling and take medication to stabilize her mood, and that she had seen improvement through her treatment during the pendency of this case.
 {¶ 16} At the time of the hearing, Mother was taking her prescribed medication, regularly attending counseling, and complying with her treatment program, but she was required to do so by the mental health court to resolve the criminal charges against her. As the manager of the mental health court testified, after Mother completes the requirements of the mental health court, there will be no means of monitoring her to make sure that she takes her medication and participates in counseling. Mother's testimony seemed to indicate that she did not believe that *Page 7 
she needed mental health treatment. She testified that she chose to go through the mental health court program because it was "the easy way out" and would enable her to resolve the criminal charges against her more quickly.
 {¶ 17} Mother's mental health history was not clear, but there was ample evidence that Mother had suffered from mental health issues before the birth of B.G. and, although she had sought treatment in the past, she had not continued in counseling or with medication for any extended period of time. There was also evidence, even from Mother's own testimony, that she had a lengthy history of allowing her decision-making to be controlled by other people, including Father, her mother, and another prior boyfriend. Never once during Mother's testimony did she accept any responsibility for her own past actions or the situation that she was in.
 {¶ 18} Evidence of Father's willingness to facilitate visitation and parenting time with Mother supported the magistrate's conclusion that Father had demonstrated an ability and willingness to allow Mother and B.G. their visitation time together. Not only had there been a several-month history of Father facilitating Mother's visitation schedule, but because the hearing was held over two days during the Thanksgiving and Christmas holiday season, the parties had extended discussions on the record about how they would make arrangements for each parent to spend holiday time with B.G. The parties' discussions on the record reflected a more cooperative attitude by Father than by Mother. Moreover, Mother testified that she would only allow Father to visit with B.G. if she was ordered by the court to do so.
 {¶ 19} Finally, as Mother repeatedly stressed throughout the hearing and again on appeal, Father has a prior felony conviction for a violent assault against his father. There was also evidence, however, to support the magistrate's finding that the assault occurred seven years before the hearing and there was no evidence of any current problem with violence by Father. *Page 8 
Father had reconciled with his father and they had been living in the same household for several years, apparently without any violent incidents. Both Father and his father testified that they have a good relationship now. Even Mother testified that she was aware of Father's felony conviction when she began dating him but that it caused her no concern because it had occurred several years earlier. "I looked at it like everybody has their mistakes. His was in the past." Mother further testified that Father had never been violent with her.
 {¶ 20} It was also relevant to the best interest factor set forth in R.C. 3109.04(F)(1)(h) that Mother was the perpetrator of the violent act that had led to B.G.'s adjudication as an abused and dependent child. As the magistrate found at the time of adjudication, although Mother had not caused actual harm to B.G., she had placed the child at a substantial risk of harm. This act of violence had just occurred during the past year and involved the child at issue in this case.
 {¶ 21} Mother further suggests that the trial court abused its discretion by failing to consider that she had been extremely diligent and cooperative in complying with the requirements of the case plan and mental health court. As this Court has repeatedly emphasized in permanent custody cases, although case plan compliance may be relevant to the trial court's best interest determination, it certainly is not dispositive. See, e.g., In re CM., 9th Dist. No. 21372, 2003-Ohio-5040, at ¶ 10. Moreover, it is clear throughout the record in this case that the trial court did take into consideration the fact that Mother had been completing the requirements of her case plan. When the case began, Mother was not allowed to visit B.G. due to the perceived threat that she posed. As the case progressed and Mother worked on her case plan goals, the trial court allowed her to have limited, supervised visitation that was expanded as Mother made more progress and demonstrated her ability to care for B.G. In its final judgment, *Page 9 
the trial court removed the requirement that visits be supervised, granting her unsupervised and expanded visitation time with B.G.
 {¶ 22} Because Mother has failed to demonstrate an abuse of discretion by the trial court, her assignments of error are overruled.
 III. {¶ 23} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 DONNA J. CARR FOR THE COURT *Page 10 
 WHITMORE, J. MOORE, J. CONCUR *Page 1