[Cite as *In re K.C.*, 2014-Ohio-372.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.C.
    V.L.
    S.L.

C.A. Nos.     26992
                26993


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 12 05 0347
               DN 12 05 0348
               DN 12 05 0349

DECISION AND JOURNAL ENTRY

Dated: February 5, 2014

---

WHITMORE, Judge.

{¶1} Appellants, Eddie L. ("Father") and Carol L. ("Grandmother"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed Father's minor children in the legal custody of their mother, Alicia C. ("Mother"). This Court affirms.

I

{¶2} Father and Mother are the natural parents of V.L., born December 30, 2005, and S.L., born April 10, 2007. Mother also has one older child, K.C., born March 10, 2003. During the years that he lived with Mother, Father also served as a father figure to K.C. because the child's father played no role in his life. Father was permitted to intervene as a party in K.C.'s case for that reason.

{¶3} During the several years that Father and Mother lived together, Grandmother, who lived nearby, was the primary person who helped Mother with the children. The

relationship between Mother and Father was a violent one and Father apparently provided little help with the children. Because Mother had numerous physical and mental health problems, she had often relied on Grandmother to provide back-up childcare.

{¶4} During January 2012, Summit County Children Services Board ("CSB") began a voluntary case with this family because Mother's mental health was not stable and CSB was concerned about domestic violence in the home. With encouragement from the agency, Mother ended her violent relationship with Father and petitioned the domestic relations court for a civil protection order. After an initial emergency order, the domestic relations court issued a five-year civil protection order that prohibited Father from having any contact with Mother or the children. Animosity between Mother and Father's family developed and Mother lost Grandmother as her primary support system.

{¶5} Although Mother had been attending counseling, she was hospitalized during April 2012 because she had expressed thoughts about suicide. When CSB was unable to find suitable alternate caregivers for the three children, it filed this involuntary dependency case.[1] At that time, the children were placed in the home of Grandmother, where they remained for less than two months. The children were later adjudicated dependent children.

{¶6} Shortly after Mother was released from the hospital, a dispositional hearing was held before a magistrate to determine whether the children should be returned to her custody. During that hearing and throughout these proceedings, Father objected to the children being returned to Mother's home, arguing that her unstable mental health prevented her from providing them with a suitable home.

---

[1] For reasons not clear from the record, CSB filed complaints in April 2012, which it later dismissed, and then filed the complaints in this case in May 2012.

**{¶7}** Based on the evidence presented at that dispositional hearing, however, including the testimony of the licensed psychologist who had been counseling Mother, the magistrate ordered that the children be returned to Mother's custody. Although the trial court initially granted Father's motion to stay that order, it lifted the stay on June 8, 2012, and the children returned to Mother's custody under an order of protective supervision.

**{¶8}** For the next year, the children continued to reside with Mother. During that time, the contentious relationship between Mother and Father's family did not improve and Father and Grandmother continued to accuse Mother of being unable to care for the children. They called the caseworker frequently and called one service provider so often that it terminated the family's cases. Despite repeated allegations by Father and Grandmother that Mother or her boyfriend was mistreating the children, CSB investigated each of their concerns and found them to be unwarranted. In fact, the agency and the guardian ad litem believed that Mother had made substantial progress on the goals of the case plan and that she was providing the children with a stable and loving home.

**{¶9}** Grandmother moved to intervene in the action, and Father and Grandmother alternatively moved for legal custody of the children. Grandmother's motion to intervene was ultimately denied, but the matter proceeded on her motion for legal custody.

**{¶10}** On March 21, 2013, because the children had been residing with Mother for nearly a year without incident, CSB moved the court to terminate the order of protective supervision and place the children permanently in her legal custody. Still pending before the trial court at that time were the competing legal custody motions of Grandmother and Father. Ultimately, the matter was transferred to the trial judge to determine the permanent disposition of the children.

{¶11} Following a hearing before the trial judge, at which both CSB and the guardian ad litem supported continuing the children in Mother's legal custody and terminating protective supervision, the trial court entered judgment accordingly and denied the alternate legal custody motions of Father and Grandmother. Father and Grandmother separately appealed and their appeals were later consolidated. Father raises four assignments of error and Grandmother raises two, some of which are rearranged and consolidated for ease of review.

### Grandmother's Assignment of Error Number One

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT OVERRULED CAROL LEWIS' OBJECTIONS TO THE MAGISTRATE'S DECISION AND DENIED HER MOTION TO INTERVENE.

{¶12} Grandmother's first assignment of error is that the trial court erred in denying her motion to intervene in this dependency case. Specifically, the trial court refused to grant her motion to intervene because it concluded that she did not stand in loco parentis to the children, nor did she ever exercise sufficient parental control over them. *See In re Schmidt*, 25 Ohio St.3d 331, 337 (1986). Her argument focuses solely on whether the trial court erred in concluding that she lacked a sufficient parental role in the lives of the children to justify intervention in this case.

{¶13} To establish reversible error by the trial court, however, Grandmother must demonstrate not only that the trial court committed error but also that she suffered prejudice as a result. *See In re J.J.*, 9th Dist. Summit No. 21226, 2002-Ohio-7330, ¶ 31. Grandmother has failed to argue or demonstrate that she was prejudiced by her lack of party status in this case. The record reveals that Grandmother retained counsel, who filed a motion for legal custody on her behalf, and that the trial court allowed her to participate in a hearing after which it fully considered her motion.

{¶14} At the commencement of the legal custody hearing, Grandmother's counsel informed the court that Grandmother supported Father's motion for legal custody and that her motion was an alternate to his. Her counsel further stated that "I have no problem allowing father to call witnesses and just questioning them." The trial court allowed Grandmother's counsel to examine all witnesses and, later during the proceedings, allowed her to call a disinterested witness on Grandmother's behalf, and also permitted her to testify on her own behalf. Because she fails to argue or demonstrate that she suffered any prejudice by the trial court's denial of her motion to intervene, Grandmother's first assignment of error is overruled.

Father's Assignment of Error Number Three

> THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW AND COMMITTED PLAIN ERROR WHEN IT CONSIDERED THE GUARDIAN AD LITEM'S RECOMMENDATION TO BE IN THE BEST INTEREST OF THE CHILDREN EVEN AFTER SHE ADMITTED TO FAILING TO CONDUCT CERTAIN INVESTIGATIVE DUTIES, WHICH WAS ULTIMATELY PREJUDICIAL TO FATHER.

{¶15} Because Father's third assignment of error pertains to evidence underlying the legal custody decision, it will be addressed out of order. Father argues that the trial court erred by considering the recommendation of the guardian ad litem because she failed to fulfill her role as set forth under Ohio law. Because Father failed to raise this issue in the trial court and has not developed a plain error argument, he cannot now fault the trial court for considering the recommendation of the guardian ad litem. *See In re J.G.*, 9th Dist. Wayne No. 12CA0037, 2013-Ohio-417, ¶ 20.

{¶16} During the legal custody hearing, Father cross-examined the guardian ad litem about whether she had fulfilled her duties and whether she had actually considered him as a potential custodian for the children. He raised no objection to the admission of her report or testimony, however, nor did he otherwise argue that the trial court should not consider the

recommendation of the guardian ad litem in making the best interest determination. Father's third assignment of error is overruled.

### Grandmother's Assignment of Error Number Two

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT DENIED [GRANDMOTHER'S] MOTION FOR [LEGAL] CUSTODY.

### Father's Assignment of Error Number One

THE TRIAL COURT'S JUDGMENT ENTRY WAS AN ABUSE OF DISCRETION, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND CONTRARY TO LAW WHEN IT GRANTED LEGAL CUSTODY TO MOTHER.

### Father's Assignment of Error Number Two

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AWARDED CUSTODY TO MOTHER DESPITE THE FACT THAT SHE HAD FAILED TO SUBSTANTIALLY COMPLY WITH HER CASE PLAN OBJECTIVES, WHEN FATHER HAD FULLY COMPLIED.

**{¶17}** We will address these three assignments of error together because they pertain to the merits of the trial court's conclusion that legal custody to Mother was in the children's best interests. Grandmother and Father argue that, rather than permanently placing the children in the legal custody of Mother, the trial court should have granted one of their alternate motions for legal custody.

**{¶18}** Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. *See In re D.R.*, 153 Ohio App.3d 156, 2003–Ohio–2852, ¶ 17 (9th Dist.). "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004–Ohio–110, at ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002–09–236, 2003–Ohio–5984, ¶ 11. The trial court's decision to grant or deny

a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion. *In re M.S.*, 9th Dist. Summit No. 22158, 2005–Ohio–10, ¶ 11. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶19} In this case, the trial court applied the best interest test set forth in R.C. 2151.414, but Father argues that the appropriate factors are set forth in the best interest test of R.C. 3109.04(F). Father cites no case law to support his position that the trial court applied the wrong test and "this Court has held that the best interest test set forth in R.C. 2151.414(D), although it relates to permanent custody, 'provide[s] guidance' in legal custody determinations." *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, quoting *In re T.A.*, 9th Dist. Summit No. 22954, 2006–Ohio–4468, ¶ 17.

{¶20} At the hearing, and again on appeal, rather than pointing to evidence that either of them could provide the children with a more suitable home, Father and Grandmother have challenged Mother's ability to do so. Moreover, their attempt to discredit Mother's parenting ability has continued to focus on facts that arose before the adjudication of the children. The trial court had already considered those facts when it adjudicated the children dependent and the purpose of the final hearing was not to rehash those facts. *See In re T.R.*, 9th Dist. Summit Nos. 25179 & 25213, 2010-Ohio-2431, ¶ 14. Instead, the primary focus at the legal custody hearing was on the current parenting ability of each potential custodian and whether it was in the best interest of the children to be permanently placed in the legal custody of any of them. *See id.*

{¶21} The trial court heard very little evidence about the ability of Father or Grandmother to provide a permanent home for the children. In fact, even when Father and

Grandmother testified, they focused on attacking Mother's parenting ability, even though they each conceded that they had not seen Mother with the children during the past year.

{¶22} As to Mother's current parenting ability, Father argues only that Mother had not fully complied with the reunification requirements of the case plan, but that he had, suggesting that he was the more suitable custodian for the children. This Court has frequently emphasized that "although case plan compliance may be relevant to the trial court's best interest determination, it certainly is not dispositive." *See*, *e.g*., *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 21.

{¶23} Moreover, the record reveals that, according to the caseworker, Mother had complied with the requirements of the case plan. The caseworker verified with Mother's psychiatrist that, since her hospitalization more than one year earlier, Mother had been consistently taking her medications and attending counseling. He believed that Mother was taking care of herself and her children and had no concerns about her ability to provide them with a suitable permanent home.

{¶24} The caseworker further explained that all three children have special needs, including autism and developmental delays. He had regularly observed Mother patiently interacting with the children and demonstrating an understanding of their special needs. She had been ensuring that each child was regularly engaged in services with appropriate providers and she had been described by one service provider as "deeply involved" in the children's services.

{¶25} The evidence further revealed that Mother had established a reliable support system to assist her in her care of the children. In addition to a friend and her sister, Mother had become involved with a different man who assisted her with the children. The children liked this man and CSB and the guardian ad litem had approved him as an alternate caregiver for the

children. The guardian ad litem testified that she had observed the man interact appropriately with the children during several visits to their home. She also observed that the children were excited to see him when they returned home from visits with Father. Although V.L. had told others that this man hit him, the caseworker and guardian ad litem did not believe his accusations because they were contradicted by the other children and by V.L. himself.

{¶26} The trial court interviewed the children in camera and each child told her that they wanted to continue living with Mother and visiting Father. The guardian ad litem also testified that she had spoken to the children about their wishes several times throughout this case. They consistently told her that they wanted to live with Mother. The guardian had observed "a very strong bond" between Mother and the children. Mother was affectionate with the children and they wanted to be near her to cuddle and sit in her lap. She further opined that Mother was meeting the children's daily needs and that it was in their best interests to continue in Mother's custody on a permanent basis, without any supervision by CSB.

{¶27} Given the evidence presented at the hearing, the trial court reasonably concluded that it was in the best interests of K.C., V.L., and S.L. to continue in the custody of Mother. Consequently, Father and Grandmother have failed to demonstrate that the trial court abused in discretion by placing the children in Mother's legal custody rather than in the legal custody of either of them. Grandmother's second and Father's first and second assignments of error are overruled.

### Father's Assignment of Error Number Four

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT REQUIRED FATHER'S INCREASED VISITATION TO BE CONTINGENT UPON FATHER AMENDING THE CIVIL PROTECTION ORDER MOTHER HAD OBTAINED AGAINST HIM IN DOMESTIC RELATIONS COURT PRIOR TO THE FILING OF THE JUVENILE COURT COMPLAINT.

{¶28} Father's final assignment of error is that the trial court abused its discretion by failing to expand his time with the children to the standard order of parenting time. *See Braatz v. Braatz*, 85 Ohio St.3d 40, 45 (1998). Father argues that the juvenile court acted unreasonably by conditioning his right to increased parenting time upon him obtaining a modification of the existing civil protection order. We disagree.

{¶29} In early 2012, before this case was filed, CSB encouraged Mother to end her violent relationship with Father and obtain a civil protection order. Following a hearing, the domestic relations court issued a five-year civil protection order that prohibited Father from having any contact with Mother or the children. To enable Father to visit with the children during the pendency of this dependency case, the parents returned to domestic relations court to jointly request a modification of that order. The domestic relations court modified the order by transferring matters pertaining to the children to the juvenile court. The civil protection order as it pertained to Mother remained in effect, prohibiting Father from having any contact with her.

{¶30} After the domestic relations court transferred matters pertaining to the children, the juvenile court granted Father weekly visitation with the children. Because Father continued to be prohibited from having any contact with Mother, including communication via telephone or e-mail, Father's visitation was arranged so the two parents would have no contact with each other. Father continued to visit with the children under this type of arrangement for the remainder of the case, seeing them once a week for three hours.

{¶31} The trial court heard evidence during the legal custody hearing that it would be in the children's best interests to spend more time with Father. Although the trial court ultimately agreed that Father should have expanded time as set forth in the standard parenting time order, the trial judge expressed her concern during the hearing that the parents were prohibited by the

protection order from communicating with each other, which seriously hindered their ability to exchange physical custody of the children more frequently. She explained that unexpected circumstances will inevitably arise that require adjustments to the parenting time order, such as when the children or parents have activities that were not anticipated or addressed by the written schedule. Without communication between the parents, she expressed concern that the parties would continually be coming back to court for adjustments to the schedule and/or that the children would be dropped off with one parent when no one was home. Although the trial court reasonably believed that communication between the parents was necessary to facilitate a standard order of visitation, it had no ability to modify the civil protection order to allow the parents to communicate, as that authority was vested solely with the domestic relations court. R.C. 3113.31(B) and (A)(2); R.C. 3113.31(E)(8); *See also Gomez v. Dyer*, 7th Dist. Noble No. 07NO342, 2008-Ohio-1523, ¶ 23.

{¶32} Counsel for Mother stated on the record that Mother would support a modification of the civil protection order to allow the parents to communicate via telephone, e-mail, and/or text message to be able to keep each other informed about the children and their schedules. *See* R.C. 3113.31(E)(8)(c)(i). Although Father asserts that it was unreasonable for the juvenile court to require him to seek a modification of the order rather than Mother, because she obtained the order in the first place, he overlooks the significant fact that the order had resulted from his own acts of domestic violence toward Mother. *See* R.C. 3113.31(A)(1) and (C).

{¶33} Given the evidence presented at the hearing, we cannot say that the trial court acted arbitrarily or unreasonably by requiring Father to obtain a modification of the civil protection order before his parenting time with the children would be expanded to the standard order. Father's fourth assignment of error is overruled.

III

**{¶34}** The assignments of error of Father and Grandmother are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

KANI HIGHTOWER, Attorney at Law, for Appellant.

SHUBHRA AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

ALEXANDRA HULL, Attorney at Law, for Appellee.

JOSEPH KERNAN, Attorney at Law, for Guardian ad Litem.