[Cite as *In re L.H.*, 2016-Ohio-8284.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: L.H.

C.A. No.    28090

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 13-10-691

DECISION AND JOURNAL ENTRY

Dated: December 21, 2016

---

MOORE, Presiding Judge.

{¶1}    Appellant, Tyrone P. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed his minor child in the legal custody of a maternal relative.  This Court affirms.

I.

{¶2}    Father is the biological father of L.H., born October 20, 2013.  The child's mother ("Mother") did not appeal from the trial court's judgment.

{¶3}    Shortly after L.H. was born, Summit County Children Services Board ("CSB") filed a complaint to allege that he was a dependent child because Mother had tested positive for drugs during her pregnancy, failed to seek regular prenatal care, and had two older children who had been permanently placed outside her custody because of her history of drug use and domestic violence.  L.H. was placed in the emergency temporary custody of Mother's cousin

("Cousin"). Following the adjudication of L.H. as a dependent child, the trial court placed him in the temporary custody of Cousin.

{¶4} Father had been present at the birth of L.H. and knew that CSB had removed him from Mother's custody, but he did not become involved in this case for several months. Although Father always believed that he was the father of L.H., Mother had apparently suggested otherwise. During March 2014, paternity testing confirmed that Father was the biological father of L.H. Until Father's paternity was conclusively established, the paternal grandmother ("Grandmother") did not reach out to CSB to request visits with L.H. Grandmother began visiting L.H. when he was five months old and visits were eventually extended to bimonthly weekend visits at her home. Although Grandmother requested that L.H. be placed in her custody, L.H. was already placed with a relative, Cousin, who had completed all of the necessary assessments and had been approved for placement by CSB. L.H. had been living in Cousin's home for several months, was doing well there, and, according to the caseworker, Cousin was "the only mother that [L.H.] has ever known[.]"

{¶5} During September 2014, Mother gave birth to a daughter, K.H., who is not a party to this appeal because she is not Father's child. Because Mother stopped complying with the requirements of case plan in K.H.'s case, K.H. was also placed in the temporary custody of Cousin. For the next several months, both children continued to reside with Cousin and developed a loving bond with Cousin and each other.

{¶6} By January 2015, Mother had stopped working on the reunification goals of the case plan and had stopped communicating with Cousin and her children, the caseworker, and her service providers. Father also failed to make progress toward remedying his parenting problems. Consequently, CSB eventually moved the trial court to place L.H. in the legal custody of Cousin.

Father and Mother alternatively requested that L.H. be placed in the legal custody of Grandmother. Following a final dispositional hearing before a magistrate, L.H. was placed in the legal custody of Cousin. The trial court overruled Father's objections to the magistrate's decision and placed L.H. in the legal custody of Cousin. Father appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING [CSB'S] MOTION FOR LEGAL CUSTODY AND DENYING FATHER'S MOTION FOR LEGAL CUSTODY.

{¶7} Father's sole assignment of error is that the trial court erred in placing L.H. in the legal custody of Cousin rather than Grandmother. After an adjudication of neglect, dependency, or abuse, "the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶8} The focus of the legal custody hearing was on the parenting ability of the potential custodians (Cousin and Grandmother) and whether it was in the best interest of L.H. to be permanently placed in the legal custody of either of them. *See In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 20. CSB and the trial court recognized that Cousin and Grandmother both had good relationships with L.H. and that either would be a suitable custodian

for him. The trial court found, however, that it was in the best interest of L.H. to remain in the home of Cousin, where he had lived his entire life.

{¶9} Father does not dispute that Cousin is a suitable custodian for L.H. His primary argument is that, because Grandmother has a closer blood relationship to L.H. than Cousin, the trial court should have given her preference in its best interest determination. Father relies on a decision from another appellate district, *In re J.B.S.*, 4th Dist. Scioto No. 09CA3316, 2010-Ohio-1974. Even if this Court were to accept the reasoning of that decision, it fails to support Father's argument.

{¶10} To begin with, *In re J.B.S.* was an appeal from a trial court's decision to place the child in the legal custody of a non-relative. *See id*. at ¶ 4, 14. Here, L.H. was placed with Cousin, who is also a relative. Moreover, although *In re J.B.S.* noted that "appropriate relatives" should generally be given priority consideration over nonrelatives, it emphasized that a blood relationship, in and of itself, does not control the trial court's best interest determination. *Id*. at ¶ 25. Instead, the court emphasized the bond that the J.B.S. had developed with her relatives and siblings while placed in the relative's home and concluded that it was "unreasonable" for the child "to be torn from the only family that she has ever known." *Id.* at ¶ 25-26. The court's emphasis in *In re J.B.S.* was on the child's interaction and emotional bond with her relatives, not simply their blood relationship. *Id*.

{¶11} By the end of the legal custody hearing in this case, L.H. had lived with Cousin for his entire 20-month life. The caseworker and the guardian ad litem described the close bond between L.H. and Cousin and testified that L.H. is very comfortable in Cousin's home. The guardian ad litem described their interaction as "[j]ust like a mother and a child would have." Moreover, several witnesses testified about the close relationship between L.H. and his younger

half-sibling, K.H., who also lived in Cousin's home. CSB had also requested that K.H. be placed in the legal custody of Cousin and that motion was not opposed. The trial court appropriately weighed in Cousin's favor the fact that the siblings would remain together if L.H. was also placed in Cousin's legal custody. Grandmother has no blood relationship to K.H. and was not seeking legal custody of her. Although Grandmother expressed a willingness to allow visits between L.H. and K.H., if L.H. had been placed in Grandmother's legal custody, he would no longer have day-to-day contact with K.H.

{¶12} Father has failed to demonstrate that the trial court incorrectly weighed the best interest factors to conclude that legal custody to Cousin was in the best interest of L.H. Father's assignment of error is overruled.

### III.

{¶13} Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                         _____
                                         CARLA MOORE
                                         FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.


APPEARANCES:

DEREK CEK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

RONALD GATTS, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.