[Cite as *In re P.D.*, 2017-Ohio-1151.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: P.D.
      P.D.

C.A. No.      28264

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.     DN 13-11-757
                   DN 13-11-758

DECISION AND JOURNAL ENTRY

Dated: March 29, 2017

SCHAFER, Judge.

{¶1} Appellant, Matthew D. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed two of his minor children in the legal custody of relatives. This Court affirms.

I.

{¶2} Father is the natural father of P.D., a boy born October 15, 2005; and P.D., a girl born August 11, 2011. Although Father has three other children, one is an adult and the other two are in the legal custody of relatives. The mother of P.D. and P.D. ("Mother") did not appeal from the trial court's judgment.

{¶3} CSB's history with this family dates back to 2010, prior to the birth of the younger child, because of concerns about drug usage and domestic violence in the home of Father and Mother. CSB opened a voluntary case and worked with the family for several months. During that case, Father admitted that he had an anger management problem and that he

had repeatedly perpetrated violence against Mother and the paternal grandmother. When the 2010 case was closed, Father was incarcerated, so the older P.D. returned to live with Mother only.

{¶4}  CSB opened another voluntary case with the family during 2012, again because of drug usage by both parents and domestic violence in the home. Father was incarcerated during part of that case on a domestic violence conviction. The children were temporarily placed with relatives and ultimately returned to Mother's custody.

{¶5}  On August 31, 2013, P.D. and P.D. were removed from the custody of Mother pursuant to Juv.R. 6 because Mother was homeless, had left her young children with a pre-teenaged stranger at a convenience store, and appeared to be intoxicated when police responded to the scene. Both children were later adjudicated as dependent children.

{¶6}  At the beginning of this case, Father was incarcerated on a felony drug conviction. The children were separately placed in the temporary custody of two different relatives, but they were later removed from those homes at the requests of the relatives because they had difficulty supervising the children's visits with their parents after Father was released from prison. Shortly afterward, the older P.D. was placed with his maternal grandparents ("Grandparents") and the younger P.D. was placed with a maternal aunt ("Aunt"). The children remained in those placements for the remainder of the proceedings.

{¶7}  Father was not considered for placement of his children during this case. He has a lengthy criminal history, including several convictions and incarcerations for domestic violence and possession of large quantities of drugs. When this case began, Father was incarcerated for a felony drug conviction. He was released in February 2014 and, two months later, Father and Mother were charged with another felony drug offense involving methamphetamine production.

Father was convicted and served another period of incarceration for more than one year during this case.

{¶8} Ultimately, CSB moved to have the older P.D. placed in the legal custody of Grandparents and the younger P.D. placed in the legal custody of Aunt. Father alternatively requested legal custody of both children. Following a hearing before a magistrate and, after overruling Father's objections to the magistrate's decision to grant the relatives' requests for legal custody, the trial court placed the older P.D. in the legal custody of Grandparents and the younger P.D. in the legal custody of Aunt. Father appeals and raises one assignment of error.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR IN GRANTING CUSTODY OF P.D. AND [P.D.] TO RELATIVES AS THE GRANTING OF CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Father argues that the trial court's legal custody decision was against the manifest weight of the evidence. Rather than placing his children in the legal custody of two different maternal relatives, he asserts that the trial court should have placed them in his legal custody. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. In making this determination, "courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination

of the two, or general notions of what should be considered regarding the best interests of the children." (Citations omitted.) *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

{¶10} Father disputes the testimony of the caseworker that he had not complied with the reunification requirements of the case plan. Although Father's compliance with the case plan may have been relevant to the best interest of P.D. and P.D., it was not dispositive. *See*, *e.g.*, *In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 22, citing *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 21. Even if Father had completed the requirements of the case plan, the primary focus at the legal custody hearing was on the current parenting ability of the potential custodians and whether it was in the best interest of each child to be permanently placed in the legal custody of any of them. *In re K.C.* at ¶ 20.

{¶11} When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, his wishes, the custodial history of the child, and his need for permanence in his life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Although the trial court is also required to consider any relevant factors under R.C. 2151.414(E)(7) through (11), none of those factors applied to the facts of this case. *See id.*

{¶12} Father's interaction with his children during this case was limited to supervised visits that were scheduled to occur on a weekly basis. Because Father was incarcerated for most of this case, however, his scheduled visits with the children were limited to approximately two months early in the case and four months prior to the legal custody hearing. Moreover, during the time that he was not incarcerated, Father did not always come to the scheduled visits. The counselor for the older P.D. testified that she had counseled P.D. about Father missing scheduled

visits because the child would be upset and believed that Father did not come because he did not love him.

{¶13} Father explained that he missed visits because he had other children and his work schedule often changed. The record revealed, however, that one of Father's children is an adult and none of his children live with him. As to his changing work schedule, Grandparents and Aunt had arranged to accommodate Father's work schedule, but Father did not always communicate with them to reschedule the visits. Although Father asserts that the children are bonded with him, the record reflects only that the children enjoyed visiting him because they liked to fish and engage in other activities during their visits.

{¶14} The proposed custodians were Aunt and Grandparents, who are Aunt's parents. Aunt and Grandparents have stable homes, employment, and consistent and positive relationships with the children and each other and none of them has a criminal or drug history. The children had lived in the homes of their respective custodians for more than one and one-half years and were thriving in those environments. Aunt and Grandparents had ensured that each child participated in regular counseling to address their behavioral problems and had worked with the counselors so the children could utilize the coping skills that they learned.

{¶15} Father's best interest argument focuses primarily on the fact that the children were placed in separate homes. Although P.D. and P.D. had been placed in the homes of two different maternal relatives, they had frequent and positive interaction together. They saw each other during the supervised visits with Mother and/or Father, and the caregivers arranged for them to see each other in each other's homes. The siblings visited together for short and extended visits at Aunt and/or Grandparents' homes and the two families had vacationed together.

6

{¶16} Moreover, Grandparents and Aunt had been able to facilitate visits with each parent and their extended families. Mother and Father visited the children separately because of the violent history between them. Father admitted that he and Mother did not get along, that she was a negative influence on him, and that he had stopped all contact with her toward the end of this case. If granted custody, Father did not explain how he would facilitate visits between Mother and the children.

{¶17} The older P.D. expressed a desire to remain in Grandparents' home, although he wanted to continue to visit Father. The guardian ad litem spoke on behalf of the younger P.D., who was only four years old at the time of the hearing. The guardian recommended that both children be placed in the legal custody of their respective relative caregivers. She testified that Grandparents and Aunt were doing a "fantastic job" in providing for the children and explained that they had worked to maintain a sibling bond between them by getting them together as much as possible. Although she recognized that Father had made progress since his release from prison, she was concerned about his lack of stability and that he had not had custody of either child for the past four years.

{¶18} At the hearing, Father admitted that he had spent much of his adult life in prison. After his most recent term of incarceration, he had been out of prison for only four months. Both children were in need of a legally secure placement because the younger P.D. had been in and out of temporary placements for her entire four-year life and the older P.D. had lacked stability for more than half of his life. The trial court reasonably concluded that both children would have a legally secure permanent placement if placed in the legal custody of the relatives with whom they had resided for the past one and one-half years. Father's assignment of error is overruled.

III.

**{¶19}** Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

CARA FORD, Attorney at Law, for Appellee.

DIANNE CURTIS, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.