[Cite as *In re J.C.*, 2017-Ohio-7149.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.C.
    T.C.
    A.C.

C.A. No.      28550

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 14-06-354
                 DN 14-06-355
                 DN 14-06-356

DECISION AND JOURNAL ENTRY

Dated: August 9, 2017

---

CARR, Judge.

**{¶1}** Appellant, K.C. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor children in the legal custody of a maternal aunt. After the trial court issued its final judgment in this case, Mother filed a suggestion of the unexpected death of her oldest child, J.C. Because the custody of J.C. has tragically become moot, J.C. is dismissed from this case. This Court affirms the trial court's decision as it pertains to Mother's other two children.

I.

**{¶2}** Mother is the biological mother of T.C., born January 20, 2012; and A.C., born February 27, 2014. The children's father was not involved in the trial court proceedings and did not appeal from the trial court's judgment.

**{¶3}** On June 2, 2014, Summit County Children Services Board ("CSB") filed complaints to allege that Mother's children were neglected and dependent. Mother has significant cognitive delays and, although she had been working on a voluntary case plan for many months, she was still unable to meet the children's basic needs or provide them with a safe and sanitary home. The children were adjudicated neglected and dependent and placed in the temporary custody of CSB.

**{¶4}** While Mother's children remained outside of her custody, she worked with in-home service providers to improve the physical condition of her home. CSB did not dispute that, with the assistance of in-home service providers, Mother was able to maintain a clean home without the children there. The agency remained concerned, however, about Mother's ability to independently care for her children. Mother did not consistently engage in case planning services and failed to demonstrate an ability to care for the children without the assistance of other adults.

**{¶5}** During May 2016, CSB moved for permanent custody and Mother alternatively moved for legal custody of the children. The next day, CSB filed notice that it was decreasing Mother's supervised visitation time and relocating visitation from her home to the visitation center. A hearing was later held before a magistrate. The parties agreed that CSB had been making reasonable efforts to find a suitable permanent home for the children. The disputed issues at the hearing were the appropriate length and level of supervision of Mother's visits and whether visitation should continue in her home or be returned to the visitation center.

**{¶6}** Although the magistrate decided that Mother's visits should not change, the trial court later set aside that ruling. The trial court held that Mother continued to require supervision and that visitation should be relocated to the visitation center because Mother no longer qualified

for assistance from a service provider that had been assisting with the supervision of her in-home visits with the children.

{¶7} The final dispositional hearing was continued because the guardian ad litem withdrew and a new guardian was appointed. Before the final dispositional hearing, the new guardian ad litem filed a motion to place the children in the legal custody of a maternal aunt ("Aunt"), who had been involved with the children throughout their lives and was prepared to provide them with a permanent home. Following a hearing on the competing dispositional motions, the trial court denied CSB's motion for permanent custody and Mother's motion for legal custody and granted the motion to place the children in the legal custody of Aunt. Mother appeals and raises two assignments of error, which will be addressed in reverse order to facilitate review.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT-MOTHER'S MOTION FOR LEGAL CUSTODY WHERE CSB FAILED TO USE REASONABLE EFFORTS TO REUNITE APPELLANT-MOTHER AND HER MINOR CHILDREN.

{¶8} Mother's second assignment is that CSB failed to exert reasonable reunification efforts in this case. She failed to challenge the efforts exerted by the agency prior to or during the final dispositional hearing, however. Moreover, the record reveals that, by the time of the final dispositional hearing, Mother had been receiving ongoing case planning services for more than two years. CSB had connected Mother with numerous outside service providers, but Mother did not consistently follow through with any of them. Although Mother now argues on appeal that she did not understand what was expected of her on the case, the evidence in the record demonstrates that Mother continued to deny that she was cognitively impaired and had

even been able to convince the Summit County Department of Developmental Disabilities ("Summit DD") that she no longer qualified for services.

{¶9} At the hearing held after CSB gave notice that it would decrease Mother's visitation time and relocate her visits to the visitation center, Mother's only challenge to the agency's case planning efforts was that she should be allowed to have longer and unsupervised visits with the children. Mother's trial counsel stipulated that CSB had exerted reasonable efforts to find a suitable permanent home for the children. The magistrate entered that stipulated reasonable efforts finding on the record and Mother did not challenge that finding. Because Mother has failed to argue or demonstrate ineffective assistance of trial counsel for failing to raise a reasonable efforts challenge or plain error in the trial court's ultimate reasonable efforts finding, her second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

> THE TRIAL COURT'S DECISION TO GRANT LEGAL CUSTODY TO MATERNAL AUNT WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother's first assignment of error is that the trial court's decision to place the children in Aunt's legal custody was not supported by the evidence. This Court emphasizes in this case that, although the trial court placed Mother's children in the legal custody of Aunt, it denied CSB's alternative motion for permanent custody of the children. The juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead "leaves intact 'residual parental rights, privileges, and responsibilities.'" *In re Shepherd*, 4th Dist. Highland No. 00CA12, 2001 WL 802209, *7 (Mar. 26, 2001), quoting former R.C. 2151.011(B)(17).

Aunt emphasized to the trial court that she agreed to assume the role of legal custodian so that Mother would be able to retain rights as the children's mother.

**{¶11}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA 2002-09-236, 2003-Ohio-5984, ¶ 11.

**{¶12}** Mother asserts that she had made substantial progress on the reunification requirements of the case plan, but the record demonstrates otherwise. Several witnesses testified that Mother engaged in case plan services only sporadically. Early in the case, Mother was receiving services from Summit DD but, because she missed so many appointments, many service providers refused to work with her. She was later terminated from Summit DD services because she convinced an assessor that she could care for herself. That same witness explained that Mother's disability assessment pertained only to her ability to care for herself, not for her children. Another witness from Summit DD testified that she believed that Mother underreported her disability because she did not want to receive services. Although Mother was twice scheduled to be reassessed by the state, she missed the scheduled appointments.

**{¶13}** Mother participated in some counseling, but only on a sporadic basis. Her counselor testified that, because Mother had missed so many appointments, she would no longer schedule appointments for Mother, but she allowed her to attend on a limited, walk-in basis. The

counselor further explained that she was working with Mother to help her cope with the stress in her life, not on any of the goals of the case plan.

{¶14}  Moreover, Mother's progress on the case plan may have been relevant to the best interest of her children, but it was not dispositive.  *See*, *e.g*., *In re K.C*., 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 22, citing *In re B.G*., 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 21.  The primary focus of the trial court's legal custody determination was the current parenting ability of Mother and Aunt and whether it was in the best interest of the children to be permanently placed in the legal custody of either of them.  *In re K.C*. at ¶ 20.

{¶15}  The evidence pertaining to the best interest of the children fully supported the trial court's decision.  "[T]his Court has held that the best interest test set forth in R.C. 2151.414(D), although it relates to permanent custody, 'provide[s] guidance' in legal custody determinations." *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, quoting *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17.  When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and their need for permanence in their lives.  *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶16} Throughout this case, Mother's interaction with her children was limited to supervised or monitored visitation.  Witnesses agreed that Mother and the children love each other and enjoy being together, but the evidence was not disputed that Mother lacked the ability to care for her children without assistance.  According to a social work assistant who supervised some of mother's visits, Mother's interaction with the children during visits was "minimal[.]"

She explained that Mother tended to sit on the couch and watch the children and would intervene only when the children began fighting.

{¶17} Several visitation supervisors testified that they had to intervene during every visit to prompt Mother to interact with the children and/or to protect the children from harming themselves. Despite two years of redirecting Mother's interaction with the children, those who supervised the visits testified that they had seen little improvement in Mother's ability to interact with or supervise the children. The caseworker, a licensed social worker who had worked for CSB for nearly 15 years, opined that Mother lacked the ability to care for her children on her own.

{¶18} CSB repeatedly planned to expand Mother's visits with the children, but those expanded visits did not occur because Mother continued to exercise "poor judgment" by choosing to do something other than working toward reunification with her children. At one point during the case, Mother was scheduled to have an expanded visit with her children but she chose instead to go on an out-of-state trip with her boyfriend. Another time, Mother missed a visit because she had been arrested for getting into an altercation with the children's father, in violation of a no contact order.

{¶19} On the other hand, the children's interaction with Aunt was positive. Aunt had been involved with the children throughout their lives, had been regularly visiting them during this case, and her home had been approved by CSB as a kinship placement. Aunt had visited the children in the foster home twice a week to learn their daily routines. The foster mother testified that Aunt did well with the children and that she "[d]efinitely" observed a bond between Aunt and the children. The caseworker also testified about a positive bond between Aunt and the

children and explained that CSB also supported legal custody to Aunt as the least restrictive placement for the children.

{¶20} The children's interaction with Aunt had progressed to overnight visits at Aunt's home. Aunt testified that she was prepared to assume the role of the children's legal custodian, that she "fully understood" that role, and explained that she wanted to help Mother retain some of her parental rights. Aunt and Mother have other family members who were prepared to assist Aunt with the children and their visits with Mother.

{¶21} The guardian ad litem testified that the children were not mature enough to express their own wishes, so she spoke on their behalf. She had filed the motion for legal custody to Aunt because Aunt was able to provide appropriate care for the children and would maintain a good relationship between Mother and the children. The guardian ad litem expressed "grave concerns" about Mother's ability to independently care for the children on a daily basis. She explained that Mother did not seem to appreciate that her obligation to her children was more than providing them with a clean home and emphasized that the children were young, active, and "need constant direction."

{¶22} Mother's children had been living in a temporary placement for nearly two years and were in need of a legally secure permanent placement. The trial court reasonably concluded that placing them in the legal custody of Aunt would provide them with such a placement and would also allow them to maintain a relationship with Mother.

{¶23} Mother has failed to demonstrate that the trial court erred in concluding that legal custody to Aunt was in the best interest of the children. Mother's first assignment of error is overruled.

III.

**{¶24}** Mother's assignments of error are overruled. The appeal is dismissed, in part, as it relates to J.C. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

> Appeal dismissed, in part,
> and judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

PAUL GRANT, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.