[Cite as *In re S.B.*, 2017-Ohio-1353.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.B.

C.A. No.      28276

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      DN 13-10-0699

DECISION AND JOURNAL ENTRY

Dated: April 12, 2017

HENSAL, Judge.

{¶1} Appellant, Steven H. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed his minor child in the legal custody of a maternal aunt. This Court affirms.

{¶2} Father is the natural father of S.B., born March 16, 2010. At the time this case began, S.B. and her half-brother resided in the custody of their mother ("Mother"). The half-brother is not a party to this appeal because he is not Father's child. Mother did not participate in the trial court proceedings and did not appeal from the trial court's judgment.

{¶3} Although this case has a lengthy procedural history, this Court will confine its review to the basic facts relevant to this appeal. When this case began, S.B. resided with Mother and Father lived elsewhere. S.B. and her half-brother were removed from Mother's custody because of Mother's drug use and failure to provide for her children's basic needs.

{¶4} S.B. was later adjudicated a dependent child and placed in the temporary custody of CSB. Although S.B. was initially placed with Father and his girlfriend, she was later removed from that home because Father tested positive for cocaine. Consequently, the primary case plan goal for Father was to obtain a substance abuse assessment, follow any treatment recommendations, and submit to weekly and random drug testing.

{¶5} On January 16, 2014, S.B. was placed in the temporary custody of a maternal aunt ("Aunt"), who had been a caretaker for S.B. throughout her life and was also providing a temporary home for S.B.'s half-brother. S.B. remained in Aunt's home throughout the remainder of this case. The half-brother was later placed in the legal custody of Aunt.

{¶6} During June 2015, S.B. disclosed that Father had inappropriately touched her genitalia. S.B's allegation could not be substantiated, however, because there was no physical evidence and a trauma specialist opined that S.B's allegation may have been coached. Father's visits with S.B. were suspended during the investigation, but were later reinstated.

{¶7} CSB moved the trial court to place S.B. in the legal custody of Aunt and Father alternatively moved for legal custody of S.B. Following a final dispositional hearing, the magistrate concluded that it was in the best interest of S.B. to be placed in the legal custody of Aunt. The trial court ultimately overruled Father's objections to the magistrate's decision and placed S.B. in the legal custody of Aunt. Father appeals and raises one assignment of error.

## ASSIGNMENT OF ERROR

THE TRIAL COURT'S FINDING THAT LEGAL CUSTODY OF THE MINOR CHILD TO [AUNT] WAS IN THE BEST INTEREST OF THE CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Father's sole assignment of error is that the trial court erred in determining that legal custody to Aunt was in the best interest of S.B. Father argues that, because S.B. was

removed from the custody of Mother and the dependency adjudication focused on Mother's parenting problems and not his, he was a presumptively-fit parent at the time of the legal custody hearing. Consequently, he asserts that the trial court was required to find him unsuitable under the standard set forth in *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus, before considering whether to place S.B. in the legal custody of a nonparent.

{¶9} Father's argument is premised on an incorrect legal standard. Although he was not S.B.'s custodial parent when the child was removed from the home, Father does not dispute that he has always been a party to these proceedings, who received proper service of the complaint and notice of the adjudicatory hearing. In *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, the Ohio Supreme Court rejected the argument that a juvenile court must prove parental unfitness under these circumstances at this stage of a dependency proceeding. It held that "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *Id.* at paragraph two of the syllabus. Because it was a noncustodial father who appealed in *C.R.*, the Supreme Court explicitly emphasized: "[w]hen a juvenile court adjudicates a child to be abused, neglected, or dependent, it has no duty to make a separate finding at the dispositional hearing that a noncustodial parent is unsuitable before awarding legal custody to a nonparent." *Id.* at paragraph three of the syllabus.

{¶10} Therefore, the trial court was not required to find that Father was an unfit parent at the final dispositional hearing. "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the

statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶11} Father focuses the remainder of his argument on his belief that Aunt encouraged S.B. to make a false allegation that he inappropriately touched her. It is not clear from the record, however, that S.B.'s allegation was false. The guardian ad litem emphasized at the final hearing that, although S.B.'s allegation could not be substantiated, he did not believe that she had fabricated a story. He explained that, if S.B.'s allegation were false, the young child's explanation about the alleged incident would have changed over time, but it did not. S.B. consistently told him the same thing about Father touching her.

{¶12} Furthermore, the trial court properly focused its legal custody decision on the best interest of S.B. The sole focus of the legal custody hearing was on the parenting ability of each potential custodian (Father and Aunt) and whether it was in the best interest of S.B. to be permanently placed in the legal custody of either of them. *See In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 20. Father makes no argument on any of the best interest factors, however, nor does he explain why placing S.B. in his legal custody rather than Aunt's would be in the child's best interest.

{¶13} The evidence pertaining to the best interest of S.B. supported the trial court's decision. "[T]his Court has held that the best interest test set forth in [Revised Code Section] 2151.414(D), although it relates to permanent custody, 'provide[s] guidance' in legal custody determinations." *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, quoting *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. When determining the child's best interest under Section 2151.414(D), the juvenile court must consider all relevant factors,

5

including the interaction and interrelationships of the child, his wishes, the custodial history of the child, and his need for permanence in his life. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶14} Father's interaction with S.B. during this case was restricted because he never obtained a chemical dependency assessment and failed to submit to drug and alcohol screening as required by the case plan. During the four months before the hearing, Father visited S.B. only once. Although Father attempts to blame his lack of visits on the unsubstantiated allegation that he inappropriately touched S.B., the trial court fully considered that he was prevented from visiting S.B. while the allegation was investigated. The trial court reinstated visitation between Father and S.B. two months before the final dispositional hearing, but Father visited S.B. only once during that period. During that one visit, apparently because S.B. was paying little attention to Father, Father left the visit after 10 to 15 minutes. The caseworker and the guardian ad litem expressed disappointment that Father did not take full advantage of his opportunities to visit S.B.

{¶15} On the other hand, S.B. had ongoing, positive interaction with Aunt, where she had been living for over a year. S.B. was doing well in Aunt's home and was closely bonded to her half-brother, who also resided with Aunt. By the time of the final hearing, the juvenile court had placed the half-brother in Aunt's legal custody.

{¶16} S.B. had consistently told the guardian ad litem that she did not want to live with Father but that she wanted to remain in Aunt's home. The guardian ad litem also expressed his opinion that legal custody to Aunt was in the child's best interest because Aunt was meeting all of her needs and S.B. was doing well in that home. He expressed concern that, although Father proclaimed a desire to have custody of S.B., he did not comply with the substance abuse

component of the case plan and did not visit S.B. more than once after his visits were reinstated two months before the hearing.

{¶17} By the time of the final dispositional hearing, S.B. had been residing with Aunt on a temporary basis for almost one and one-half years. Before this case began, S.B. had spent the first few years of her life moving back and forth between the custody of Father and Mother. Because she had essentially been living in temporary placements for most of her life, S.B. was in need of a legally secure permanent placement. The trial court reasonably concluded that Aunt would provide the most suitable placement for S.B.

{¶18} Father has failed to demonstrate that the trial court erred by placing S.B. in the legal custody of Aunt. Father's assignment of error is overruled.

III.

{¶19} Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

ALAN MEDVICK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.