**[Cite as *In re S.C.*, 2022-Ohio-4075.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: S.C.
    T.C.

C.A. Nos.    30347
                30348

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 20 10 0646
                DN 20 10 0647

DECISION AND JOURNAL ENTRY

Dated: November 16, 2022

---

CARR, Presiding Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and granted permanent custody of her two children to Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of S.C., born February 28, 2018, and T.C., born August 26, 2019. After receiving a referral in September 2020 regarding the children's well-being, CSB removed them from their parents' care and filed a complaint alleging that both children were abused (endangered) and dependent. The agency later withdrew its allegations of abuse, and Mother and Father stipulated that the children were dependent based on issues identified in the complaint which focused on housing, mental health, substance abuse, and domestic violence.

The parents subsequently agreed to a disposition placing the children in the temporary custody of CSB, while Mother and Father would have supervised visitation in the discretion of the agency caseworker and the children's guardian ad litem.

{¶3} The juvenile court adopted the agency's case plan as its order. Mother and Father were each required to obtain a drug and alcohol assessment, follow all recommendations, and submit to random drug screens; obtain a mental health evaluation and follow all recommendations; engage in parenting education with an emphasis on the impact their unemployment, drug use, and lack of housing had on the children; and demonstrate the ability to meet the children's basic needs, including the utilization of community resources to supplement their incomes.

{¶4} Father relapsed into methamphetamine use early in the case, physically assaulted Mother, and attempted suicide. Although he entered a drug treatment program, Father quickly ceased participating. Although he continued to attend all court hearings, he never committed to engaging in any case plan services. In addition, Father missed many opportunities to visit with the children and struggled to interact effectively with them when he did appear.

{¶5} Mother, on the other hand, began to make progress on her case plan objectives immediately. Unfortunately, she soon suffered a mental health crisis requiring hospitalization and was discharged from a drug treatment program after relapsing into methamphetamine use. Although Mother visited with the children consistently, the guardian ad litem described her visits as "chaotic."

{¶6} Based on the parents' lack of progress on case plan objectives, including their failures to address mental health and substance abuse issues and work towards remedying the conditions that led to the children's removal from their home, CSB filed a motion for permanent custody. Mother filed a motion for a first six-month extension of temporary custody. The juvenile

court scheduled the permanent custody hearing approximately six months after CSB filed its motion. The court delayed the hearing for another six weeks because Mother had been hospitalized and required some recovery time. After the first day of the hearing, the juvenile court recessed for another two months due to the unavailability of a witness. The hearing was concluded 20 months into the case.

{¶7} After consideration, the juvenile court denied Mother's motion for a six-month extension of temporary custody, granted CSB's motion for permanent custody, and terminated Mother's and Father's parental rights. Mother filed a timely appeal and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION IN ITS GRANT OF PERMANENT CUSTODY TO [CSB] AS SUCH DECISION WAS NOT SUPPORTED BY THE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶8} Mother argues that the juvenile court's judgment is against the weight of the evidence. This Court disagrees.

Parental unsuitability

{¶9} As an initial matter, Mother argues that the juvenile court was required to either grant a six-month extension of temporary custody or return the children to Mother's legal custody because it failed to first make a finding of parental unsuitability. Mother cites several cases, including *In re Perales*, 52 Ohio St.2d 89 (1977); *Masitto v. Masitto*, 22 Ohio St.3d 63 (1986); *In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208; and *In re Davis*, 7th Dist. Mahoning No. 02-CA-95, 2003-Ohio-809, in support of her argument. Significantly, none of the cases Mother cites

involve the determination of custody regarding children who had been adjudicated dependent, neglected, and/or abused. Accordingly, they are inapposite to this case.

{¶10} The Ohio Supreme Court addressed the issue of parental unsuitability in a case involving the custodial disposition of a child who had been adjudicated neglected. The high court held that "[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents." *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 23. Relying on *In re C.R.*, this Court has recognized the parental unsuitability finding inherent when a child has been adjudicated dependent, neglected, or abused. *In re S.B.*, 9th Dist. Summit No. 28276, 2017-Ohio-1353, ¶ 9.

{¶11} In this case, S.C. and T.C. were adjudicated dependent. In fact, Mother and Father stipulated to the children's dependency. That adjudication carries with it the implicit finding of parental unsuitability. The juvenile court was, therefore, not obligated to make a separate finding of unsuitability prior to awarding custody of the children to a nonparent. Accordingly, Mother's argument to the contrary is not well taken.

Manifest weight

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} As to the first prong, CSB alleged that S.C. and T.C. could not or should not be returned to either parent pursuant to R.C. 2151.414(B)(1)(a). The juvenile court found that the agency met its burden of proof based on two of the three subsection (E) grounds alleged. Those subsections provide as follows:

> In determining at a hearing [on a motion for permanent custody] whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a [permanent custody]

hearing * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code[.]

Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one. *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11.

{¶15} Mother does not clearly develop an argument explaining why the juvenile court's award of permanent custody is against the manifest weight of the evidence. She fails to challenge the court's first-prong finding that S.C. and T.C. cannot or should not be returned to either parent's care based on the parents' failures to remedy the concerns underlying the children's removal, Father's chronic mental health issues, and both parents' chronic chemical dependency issues. In addition, Mother does not explain how the weight of the evidence supports a finding that a six-month extension of temporary custody or an award of legal custody to Mother, rather than permanent custody, is in the best interest of the children. Nevertheless, in the interest of justice and the significant rights implicated when parents face a termination of their parental rights, this

Court will engage in a thorough review to determine whether the judgment is contrary to the manifest weight of the evidence.

{¶16} This Court concludes that CSB proved by clear and convincing evidence that Mother and Father failed continuously and repeatedly to substantially remedy the conditions that led to the children's removal. *See* R.C. 2151.414(E)(1). The agency removed the children from the parents' home based on housing instability, violence in the home, and both parents' mental health and substance abuse issues. CSB developed case plan objectives for Mother and Father that were designed to alleviate those concerns and facilitate reunification efforts so that the children could safely be returned to the parents' home.

{¶17} Mother obtained a mental health and substance abuse assessment early in the case at Community Health Center Addiction Services ("CHC") and engaged in weekly counseling sessions to address her anxiety, depression, and substance abuse. While her initial attendance and communication with the service provider were good, Mother soon became inconsistent and within a few months stopped contacting her counselor. Mother tested negative for substances during a three-month period but did not appear for all dates on which she should have submitted to drug screens. After Mother then tested positive for methamphetamine use, she failed to engage further at CHC. Her counselor closed her case a couple of months later based on Mother's failure to attend sessions and engage in her treatment plan.

{¶18} Shortly thereafter, Mother went to Greenleaf Family Center ("Greenleaf") for another mental health and substance abuse assessment. She was diagnosed with stimulant use disorder, bipolar disorder, and unspecified anxiety disorder. Mother and her counselor developed a treatment plan that included individual counseling, group sessions, and engagement in parenting education. She completed her parenting classes but nevertheless continued to struggle with

managing and setting boundaries for the children during visits. Although recommended, Mother refused to consider intensive outpatient or inpatient treatment programs. Mother's attendance for individual counseling was sporadic and she did not complete the 12-week group program. After Mother failed to communicate with her for four months, the Greenleaf counselor closed Mother's case for lack of participation.

{¶19} Mother next obtained an assessment at IBH Addiction Center ("IBH") a few months before the permanent custody hearing. Mother did not attend her first mental health counseling session until two weeks before the first hearing date. She again refused to engage in the recommended inpatient drug treatment but she agreed to participate in an intensive outpatient program. Although she was permitted to attend those sessions virtually, her participation was sporadic. After two months, Mother relapsed into methamphetamine use. At that point, Mother agreed to engage in residential drug treatment, which typically lasts 45-60 days, followed by a step down program such as intensive outpatient or aftercare treatment. Although the residential treatment staff had contacted Mother, she had not scheduled her admission prior to the hearing.

{¶20} The evidence indicates that Mother fell seriously ill approximately 14 months into the case. She was hospitalized, placed on a ventilator, and diagnosed with Guillain-Barre Syndrome. While this Court does not make light of the significance of Mother's illness, the evidence demonstrates that Mother failed to engage in case plan services for a significant period of time when she was not impacted by illness. Mother testified that she was hospitalized for two weeks and unable to work on her case plan objectives for a total of ten weeks. She does not explain, however, why she failed to engage consistently in services during the eleven and a half months prior to falling ill or the three and a half months after her recovery. In fact, Mother admitted

during her testimony that she had resumed using methamphetamine weekly during the month preceding the final hearing date.

{¶21} Father's engagement in mental health services, substance abuse treatment, and parenting education paralleled Mother's. He also completed parenting classes but demonstrated little ability to apply any lessons, as he struggled to set boundaries for the children during visits. Father failed to engage in any mental health services until a couple of weeks before the permanent custody hearing. During the case, he twice engaged in self-harm and was hospitalized each time. He failed to sign releases of information for the CSB caseworker to obtain his hospital records. Father initiated services with a couple substance abuse treatment providers but he never fully engaged or followed through on any recommendations. He relapsed into methamphetamine use on several occasions and only reinitiated substance abuse treatment shortly before the hearing.

{¶22} As for their basic needs case plan objective, neither Mother nor Father was employed during the case. Father receives a $700 disability payment each month. He currently pays the maternal grandmother $500 per month for rent. Mother and Father have resumed living in the home from which the children were removed after living in multiple other homes during the past year and a half. They briefly separated after Father relapsed on drugs and physically assaulted Mother. The maternal grandmother also lives in the home with Mother and Father. Mother and the maternal grandmother have a history of domestic violence, drug use, and drug manufacturing. Although Mother testified that the maternal grandmother would move out of the two bedroom home if the children were returned to the parents' care, she had not made any alternate housing arrangements. Mother and Father had no beds, clothing, or other supplies necessary for the children in the home.

{¶23} The caseworker testified that the parents' current home was not safe or appropriate for the children because of the presence of the maternal grandmother who had ongoing physical altercations with Mother during the case and who had a recent felony drug abuse conviction. The prior owner of the home (the maternal great grandfather) had died, and the ownership of the home was unknown, although it appeared that the maternal grandmother might own her deceased father's home. There was no lease agreement to indicate that Mother and Father could remain in the home.

{¶24} Based on this Court's review, CSB established by clear and convincing evidence that Mother and Father had failed to remedy the concerns that led to the children's removal from their home. Mother and Father continued to struggle with substance abuse issues, both relapsing into methamphetamine use on multiple occasions during the case. Neither parent consistently participated in drug treatment despite the agency's referrals and the opportunity to do so with various providers. Likewise, Mother and Father failed to address their mental health issues and continued to exhibit symptoms associated with their diagnoses which impacted their abilities to parent the children safely and appropriately. Despite completing parenting education classes, neither parent demonstrated any changes in their behavior with the children during visits. Finally, Mother and Father remained unemployed, failed to pursue community financial resources that might have been available to them, lacked the resources and ability to provide for the children's basic needs, and failed to secure safe and stable housing. Accordingly, the juvenile court's first-prong finding that S.C. and T.C. could not or should not be returned to either parent's care was not against the manifest weight of the evidence.

{¶25} The agency further proved by clear and convincing evidence that an award of permanent custody was in the children's best interest. S.C. and T.C. were two and a half years old and 14 months old, respectively, when removed from Mother's and Father's custody. Both

children were significantly behind in vaccinations and routine medical care at that time. After their removal, CSB placed the children together in a foster home where they resided throughout the 20-month duration of the case.

{¶26} Mother was fairly consistent in visiting the children, while Father was less consistent. Initially, the children were fearful of Father when Mother left the room, but those fears subsided over time. The caseworker and guardian ad litem testified that there is a bond between the parents and the children. Mother and Father behaved appropriately at visits, bringing food and activities. However, they struggled to set limits with the children and follow through with consequences. Managing both young boys at once was often difficult for the parents. The guardian ad litem noted that the parents would need time to establish and maintain sobriety given their recent relapses, so that there was no immediate ability for Mother and Father to move to less structured or unsupervised visits.

{¶27} The children are closely bonded with the foster parents who consistently meet all the children's physical, medical, and emotional needs. The foster parents provide a clean and safe home where the children are comfortable.

{¶28} S.C. has speech delays and hearing issues, both of which have improved after having tubes inserted in his ears. He is on a prescreening wait list to see if he is eligible for special education services. S.C. is engaged in biweekly counseling to address some emotional outbursts and unprovoked aggressive behaviors against others, including T.C. S.C. has been diagnosed with general adjustment disorder, unspecified trauma and stressor disorder, and posttraumatic stress disorder. The child witnessed acts of domestic violence by his grandmother against Mother.

{¶29} T.C. also has difficulty regulating his emotions. Although he is below the age typically required for counseling, S.C.'s counselor at Child Guidance and Family Solutions has

incorporated T.C. into some of S.C.'s sessions to see the brothers' interactions and get a sense for T.C.'s struggles too. T.C. has noted developmental delays in speech and certain milestones. He is in speech therapy and has had his adenoids removed and tubes placed in his ears to address those issues. T.C. was recently evaluated for autism and is on a wait list for occupational and physical therapies.

{¶30} Both children are on wait lists for full developmental assessments at Akron Children's Hospital. Accordingly, the boys have numerous and frequent appointments for services which will continue indefinitely. The foster parents ensure that the children attend all appointments. The guardian ad litem surmised that, given their struggles to maintain sobriety and attend their own appointments for mental health and substance abuse treatment, Mother and Father would not likely ensure that the children receive the services and interventions necessary to address their delays and trauma.

{¶31} As S.C. was four years old and T.C. was not yet three years old at the conclusion of the hearing, they lacked the maturity to express their desires regarding custody. The guardian ad litem spoke on their behalf and opined that it is in the children's best interest to be placed in the permanent custody of CSB for purposes of adoption.

{¶32} Given the amount of time the very young children have spent in the agency's temporary custody, they require a permanent home that can offer them stability. Mother and Father have made negligible progress in regard to their case plan objectives. They lack the resources and stability necessary to provide for the children's basic needs. Given the severity of the parents' mental health and substance abuse issues and their failure to engage in treatment or services in a meaningful way, the guardian ad litem opined that there was insufficient time remaining under the statutory time limits for resolution of such cases to enable Mother and Father to address the

concerns underlying the children's removal. It was only two weeks before the permanent custody hearing that Father initiated counseling and Mother finally indicated a willingness to participate in long-recommended inpatient drug treatment. There was no evidence to indicate that either parent could provide a safe, appropriate, and stable home environment for the children in the foreseeable future. Although two relatives were identified for possible placement, neither was suitable. On the other hand, the children were comfortable, safe, and thriving in the home of the foster parents who were willing to adopt them and provide consistency in their lives.

{¶33} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of S.C. and T.C. to CSB. The parents failed to address their mental health and substance abuse issues which interfered with their ability to take care of the children. Mother and Father did not establish safe and stable housing, and they lacked the means to provide for the children's basic needs. Accordingly, the juvenile court's permanent custody judgment is not against the manifest weight of the evidence.

{¶34} This Court further rejects Mother's argument that the juvenile court erred by failing to grant an extension of temporary custody based on her case plan progress or return the children to her legal custody. R.C. 2151.415(D) permits extensions of temporary custody beyond one year only if the extension is in the best interest of the child, a parent has made significant progress on case plan objectives, and reunification is likely to occur within the period of extension. Mother at best minimally complied with her case plan objectives, and her lack of participation in services demonstrates that reunification was not likely to occur during any extension period. Moreover, it is well settled that, where an award of permanent custody is in the children's best interest, a six-month extension of temporary custody or legal custody to a parent necessarily is not. *See In re*

*A.S.*, 9th Dist. Summit No. 28743, 2017-Ohio-8984, ¶ 31; *In re D.T.*, 9th Dist. Summit No. 29876, 2021-Ohio-1650, ¶ 15. For the above reasons, Mother's assignment of error is overruled.

III.

**{¶35}** Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.