DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Kathleen F., appeals the order of the Wayne County Court of Common Pleas, Juvenile Division, that granted legal custody of her son to his paternal uncle. We affirm.
 {¶ 2} Kathleen is the mother of nine-year-old W.W. His father, Theodore W., has been incarcerated throughout these proceedings. On December 27, 2005, the Wayne County Children Services Board ("WCCSB") filed a complaint alleging W.W. to be a dependant child. In support of the complaint, WCCSB alleged that a methamphetamine lab had been discovered in Kathleen and Theodore's home in September 2005; that Theodore had been incarcerated as a result; and that Kathleen had been sentenced to a ninety-day jail term for operating a motor vehicle with a suspended license. The trial court adjudicated W.W. dependent and placed him in the temporary custody of Timothy W., his paternal uncle. The trial court granted WCCSB protective supervision. After the trial court granted two six-month extensions, WCCSB moved to amend W.W.'s disposition. On April 8, 2008, the trial court granted legal custody of W.W. to Timothy and terminated protective supervision. Kathleen timely appealed. *Page 2 
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ORDERED CUSTODY OF THE MINOR CHILD, W.W., TO TIMOTHY W[.]."
 {¶ 3} Kathleen's first assignment of error is that the trial court erred as a matter of law by basing its decision solely on the best interests of W.W. without consideration for her suitability as a parent.
 {¶ 4} Legal custody of a child "vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." R.C. 2151.011(A)(19). Unlike permanent custody, legal custody does not sever the relationship between parent and child, and a parent may move the juvenile court for a change of custody in the future. In re C.R.,108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17. The appropriate test that juvenile courts must apply when considering legal custody is the best interest of the child, and juvenile courts are not required to make the additional determination that the child's parents are unsuitable. Id. at paragraph three of the syllabus and at ¶ 8.
 {¶ 5} Kathleen's argument is phrased in the opposite manner by arguing that the trial court failed to consider her suitability rather than her unsuitability. This is a distinction without a difference. As the Supreme Court of Ohio explained in In re C.R.:
 "A juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents. It does not, however, permanently foreclose the right of either parent to regain custody, because it is not a termination of all residual parental rights, privileges, and responsibilities, and therefore a motion for a change of custody could be filed in a proper case in accordance with law." Id. at ¶ 23. *Page 3 
 {¶ 6} The trial court properly determined WCCSB's motion to modify disposition under a best interest analysis which, as is apparent from the trial court's analysis, encompassed all factors that the trial court determined to be relevant to its evaluation of W.W.'s best interest. Kathleen's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The trial court's order awarding custody of the minor child, W.W., to Timothy W[.] was against the manifest weight of the evidence and in direct opposition to the best interests of the minor child."
 ASSIGNMENT OF ERROR III "The trial court's order awarding custody of the minor child, W.W., to Timothy W[.] was an abuse of its discretionary powers."
 {¶ 7} Kathleen's second and third assignments of error are that the trial court erred by determining that awarding legal custody to Timothy was in the best interest of W.W. Specifically, Kathleen argues that the trial court's determination in this regard is against the manifest weight of the evidence.
 {¶ 8} A legal custody disposition "is not guided by clear statutory requirements, for the Ohio Revised Code fails to set forth any specific test for ruling on legal custody motions. `Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child.'" In re B.G., 9th Dist. No. 24187, 2008-Ohio-5003, at ¶ 9, quoting In re N.P., 9th Dist. No. 21707, 2004-Ohio-110, at ¶ 23. The best interest considerations set forth in R.C. 2151.414(D), which relate to permanent custody dispositions, nonetheless "provide guidance" to the trial court. In re T.A., 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17.
 {¶ 9} This Court applies the civil manifest weight of the evidence standard to juvenile cases. See, e.g., In re J.H., 9th Dist. No. 07CA009168, 2007-Ohio-5765, at ¶ 11. This standard *Page 4 
was explained in C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. See, also, State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 24. A reviewing court presumes that the findings of the trier of fact are correct because the trial judge had an opportunity "`to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Id., quoting Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. When applying this standard, "`[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'" Wilson, 2007-Ohio-2202, at ¶ 24, quoting Seasons Coal, 10 Ohio St.3d at 81. "Thus, a judgment supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed." Wilson,2007-Ohio-2202, at ¶ 26.
 {¶ 10} In reviewing a legal custody disposition, therefore, this Court must affirm if there is some competent, credible evidence in the record supporting the trial court's determination that legal custody is in the best interest of the child. In this case, we conclude that the trial court's disposition is supported by competent, credible evidence.
 {¶ 11} Vanessa Cancelliere, an ongoing caseworker for WCCSB, testified about her involvement with W.W.'s case and Kathleen's progress toward completion of the requirements of her caseplan. Ms. Cancelliere identified four areas in which the caseplan required action by Kathleen: parenting skills, housing, drug and alcohol use, and financial support of W.W. Ms. Cancelliere testified that Kathleen had completed parenting classes as required by the caseplan. *Page 5 
 {¶ 12} With respect to her housing situation, Ms. Cancelliere expressed concern. According to Ms. Cancelliere's testimony, Kathleen lived at the Salvation Army for a brief period of time, then moved in with family members of friends she "met through the DRC," an apparent reference to Kathleen's jail term for driving under a suspended license. Ms. Cancelliere testified that Kathleen became the in-home care giver for this elderly couple and, when they died, that their daughter and her family moved into the home. She testified that Kathleen had assured her that despite the fact that the house was now occupied by three adults and several children in addition to her that there would be room for W.W. Nonetheless, Ms. Cancelliere had reservations. Ms. Cancelliere stated that the occupant of the home had agreed that Kathleen and W.W. could stay, but she testified that she had not yet seen the room that, according to Kathleen, W.W. would share with three other young boys. She also stated that Kathleen did not have a bed for him.
 {¶ 13} With respect to Kathleen's drug and alcohol assessment, Ms. Cancelliere also expressed concern. Specifically, she testified that although Kathleen had completed the assessment, she had failed to complete two recommendations that had been made as a result: she had not identified a sponsor through Narcotics Anonymous (NA), and she was not attending group meetings. Ms. Cancelliere also noted that Kathleen tested positive for methadone use in April 2007. She acknowledged that Kathleen had experienced serious health problems during 2007, but testified that her prescription medications should not have caused a positive test result.
 {¶ 14} Ms. Cancelliere testified that Kathleen's visitation with W.W. had been regular and that there was a bond between them, and she noted that when the visits ended, W.W. was neither resistant nor reluctant to leave. She stated that Kathleen had failed to make court-ordered child support payments of fifty dollars per month in the months leading up to the hearing. *Page 6 
 {¶ 15} Ms. Cancelliere also testified regarding her assessment of W.W.'s placement with Timothy. She stated that she had "no concerns" about W.W.'s living situation with Timothy. She elaborated, stating that Timothy initiated counseling on his own when W.W. experienced problems, that Timothy met W.W.'s basic needs, and that W.W. had attended school regularly while in Timothy's care.
 {¶ 16} Timothy testified that he believed it would be in W.W.'s best interest if he stayed in his custody. He testified that W.W. had been living with him since October 2005, before WCCSB had become involved in the situation. He acknowledged that he was unemployed and that he and W.W. were living with his mother, but insisted that all of W.W.'s needs were met. Timothy noted that W.W. had his own room and regular meals and that he was doing well in school. He testified that when W.W. had problems at school, he handled them. As an example, Timothy testified that during the week before the hearing, W.W. had an encounter with "eighth grade bullies" that resulted in a "mark" on W.W.'s face. Timothy testified that he spoke with school administrators about the situation and that it had been resolved. Timothy acknowledged that Kathleen is "a good mother" and stated, "there's no doubt in my mind that she loves her son very much and he loves her." In summary, however, Timothy stated that in his custody, "[W.W.] is secure, he is relaxed, he's taken care of."
 {¶ 17} Guardian ad litem Jennifer Gregory testified that that she believed that W.W. was "in a very stable place" with Timothy. Ms. Gregory acknowledged that W.W. was "always very glad to see his mom"; that she had no concerns in observing their visitation; and that she had been unaware that Timothy was unemployed. She also testified that Kathleen's parenting skills did not concern her. Nonetheless, Ms. Gregory expressed concern about Kathleen's positive *Page 7 
drug test and her living situation, and expressed the opinion that the "best interest for [W.W.] for his future looks brighter where he is."
 {¶ 18} Kathleen's substance abuse counselor, Louree Edington, responded to the concerns that Kathleen had failed to complete the recommendations that resulted from her drug and alcohol assessment. Ms. Edington acknowledged that Kathleen had not affiliated with a local NA group and had not obtained an NA sponsor. She testified that in light of Kathleen's health problems, which left her unable to drive for a time, she did not feel these requirements were necessary for successful completion of a recovery program. Ms. Edington noted that the requirement for inpatient treatment had been dropped from Kathleen's assessment in favor of intensive outpatient treatment through the "Choices" program, but also acknowledged that Kathleen did not complete that program because it had been interrupted by a drug test that was positive for ecstasy. Ms. Edington expressed the opinion that a positive drug test in 2007 could have resulted from Kathleen's prescription pain killers. In summary, Ms. Edington testified that although Kathleen had not completed the specific recommendations of her drug assessment, she considered her recovery a success because Kathleen was "remaining clean and sober and abstinent and that was the primary goal of treatment[.]" She testified that she had no concern that Kathleen might relapse into drug use.
 {¶ 19} Ms. Robin LaRocca testified on Kathleen's behalf regarding her housing situation. According to her testimony, Kathleen moved in with Ms. LaRocca's parents as a caregiver in 2005. She stated that Kathleen was welcome to stay in her rented home with W.W. "as long as she needs to," and noted her appreciation for the care that Kathleen had provided to her parents. Ms. LaRocca described the bedroom that W.W. could share with her three sons, and stated that it was large enough to accommodate two sets of bunk beds, other furniture, and the *Page 8 
children's toys. She also described visits between Kathleen and W.W. that she had witnessed as "awesome," and recalled that, "he doesn't want to leave sometimes [and] he cries if he has to go home."
 {¶ 20} After noting its obligation to consider W.W.'s best interest, the trial court concluded that W.W. had "found stability in the home of his uncle [and] * * * wishes to remain with his uncle." The trial court noted that "[W.W.] has lived with his uncle for the past two and one-half years where he has established school relationships and friends. To move in with his mother, he would move to another town and school." After reviewing the evidence from the disposition hearing in detail, the trial court concluded that it was not in the best interest of W.W. "to disrupt his home," and granted legal custody to Timothy.
 {¶ 21} Having reviewed the evidence before the trial court, this Court concludes that the trial court's decision was supported by competent, credible evidence that granting legal custody to Timothy was in W.W.'s best interest. Accordingly, Kathleen's second and third assignments of error are overruled.
 {¶ 22} Kathleen's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 9 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 WHITMORE, J., DICKINSON, J. CONCUR *Page 1