[Cite as *In re S.M.*, 2023-Ohio-593.]

STATE OF OHIO      )
                    )ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: S.M.
      S.M.

C.A. Nos.    30340
                 30341

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 20 09 0583
             DN 20 09 0584

DECISION AND JOURNAL ENTRY

Dated: March 1, 2023

STEVENSON, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted Summit County Children Services Board's ("CSB" or "the agency") motion for legal custody of her two children to A.T. and M.T. (alternatively, "Cousins"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of So.M., born August 31, 2015, and Sa.M., born January 1, 2018. In September 2020, CSB filed complaints alleging that the children were neglected and dependent.[1] The agency premised its complaints on allegations of parental drug abuse and mental health issues, domestic violence in the home, unsanitary living conditions,

---

[1] CSB originally filed complaints in June 2020, but those were dismissed based on the agency's inability to perfect service on the parents.

and a lack of supervision of the young children. CSB sought and obtained an emergency order of temporary custody of the children.

{¶3} At the adjudication, Mother and Father waived their rights to a hearing and stipulated to the allegations in the complaints. The juvenile court adjudicated the children neglected and dependent. The parents later waived their rights to a dispositional hearing and agreed that the children be placed in the temporary custody of CSB. The agency placed So.M. and Sa.M. in Cousins' home.

{¶4} The juvenile court adopted the agency's case plan, as well as all amended case plans, as its orders. Pursuant to the case plan, Mother and Father were required to (1) maintain a clean, safe living environment with working utilities; (2) obtain mental health assessments and follow all recommendations; and (3) obtain substance abuse assessments, follow all recommendations, and submit to drug screens. In addition, Mother was required to attend parenting classes at one of two providers and follow all recommendations.

{¶5} The children remained in the temporary custody of CSB throughout the case. The agency maintained the girls in Cousins' home and ultimately moved for legal custody to those relatives. Father moved for legal custody, with or without an order of protective supervision.

{¶6} At the beginning of the sunset dispositional hearing, Father withdrew his motion for legal custody and indicated that he supported CSB's motion. Mother orally moved for legal custody, or alternatively, for a six-month extension of temporary custody. At the conclusion of the hearing, the magistrate granted legal custody to Cousins. Mother filed timely objections to the magistrate's decision. After consideration, the juvenile court overruled Mother's objections and issued a judgment granting CSB's motion for legal custody to Cousins. Mother timely appealed and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT GRANTED LEGAL CUSTODY OF THE MINOR CHILDREN TO MATERNAL COUSINS AND DENIED MOTHER'S MOTION FOR LEGAL CUSTODY AS [CSB] FAILED TO MEET ITS BURDEN OF PROOF AND THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} Mother argues that the juvenile court's judgment awarding legal custody of the children to Cousins is against the manifest weight of the evidence. This Court disagrees.

{¶8} As an initial matter, Mother attempts to challenge the children's adjudication as neglected and dependent children. However, an appeal from the adjudication at this point is untimely. *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, syllabus ("An appeal of an adjudication order of abuse, dependency, or neglect and the award of temporary custody * * * must be filed within 30 days of the judgment entry pursuant to App.R. 4(A).") *See also In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, ¶ 11.

{¶9} The children were adjudicated neglected and dependent on October 29, 2020.[2] The juvenile court issued its judgment placing the children in CSB's temporary custody on December 3, 2020. Accordingly, Mother had until January 4, 2021, to file an appeal challenging the adjudications. As Mother failed to timely appeal the adjudicatory judgment, this Court lacks jurisdiction to consider her argument now. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 17.

{¶10} As to Mother's assigned error, this Court has held:

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence

---

[2] As previously noted, Mother in fact waived her rights to a hearing and stipulated to the facts alleged in the complaints. In addition, she did not file objections to the magistrate's adjudicatory decision.

entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶11} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶12} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, at ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether

any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶13} In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶14} So.M. was not yet five years old and Sa.M. was two and a half years old when CSB removed them from Mother's and Father's home. Although the girls lived with both parents before their removal, A.T. testified that the children had been spending every weekend with her and M.T. well before that. Upon the children's removal from their parents' home, CSB placed the girls in Cousins' home where they remained for the duration of the case.

{¶15} So.M. and Sa.M. are happy in Cousins' home where they are bonded with A.T. and M.T. There was little evidence presented regarding Father's interaction with the children except that he attended visits with Mother. The agency caseworker testified that Mother attended most scheduled visits and that her interactions with the children were appropriate for the most part. The guardian ad litem echoed that Mother acted appropriately during visits and that she recognized a bond between Mother and the children. The parents were more recently able to visit with the girls in the home of the maternal grandmother ("Grandmother") who moved to Ohio three and a half months prior to the legal custody hearing. Although the agency could not approve Grandmother

for placement, the caseworker, guardian ad litem, and Cousins deemed her acceptable to supervise the parents' visits.

{¶16} Because of the children's lack of maturity due to their young ages, the guardian ad litem made a recommendation regarding custody on their behalf. The guardian ad litem opined that legal custody to Cousins was in the children's best interest. She reported that Cousins consistently meet the children's needs and facilitate regular parental visitation. The guardian ad litem recommended that Mother's and Father's visits with the girls remain supervised until the parents have verified to Cousins at least a six-month period of sobriety. While the physical conditions in the parents' home had been remedied by the guardian's last home visit, she maintained concerns regarding Mother's and Father's untreated substance abuse and mental health issues. Mother's continued denial of drug use, particularly after she had earlier admitted she had used fentanyl on the day she passed out in a store and had to be revived with Narcan, raised serious concerns by the guardian ad litem for the children's safety should they be left in the unsupervised care of their parents.

{¶17} When the legal custody hearing concluded, So.M. and Sa.M. had been out of their parents' custody for more than a year and a half. Accordingly, both young girls had spent a significant percentage of their lives in custodial limbo and deserved permanence. A.T. and M.T. each testified regarding their desire and ability to provide a permanent home for the children. In addition, each executed a statement of understanding for legal custody as required by R.C. 2151.353(A)(3). Father withdrew his motion for legal custody and joined in CSB's motion for legal custody to Cousins. While Mother sought reunification with the girls, the evidence demonstrated that she was not in a position to provide the children with a safe and stable home.

{¶18} The CSB caseworker testified at length regarding the concerns underlying the children's removal, the case plan objectives developed to help the parents remedy those concerns, and Mother's substantial lack of progress in addressing her objectives. The caseworker provided little information regarding Father's case plan compliance because he had joined in the agency's motion for legal custody to Cousins.

{¶19} The case plan required Mother to obtain mental health and substance abuse assessments and follow all treatment recommendations. While Mother did not deny that there were concerns regarding her mental health, she did not engage consistently in any services to address them. She consistently denied that she had substance abuse issues. When Mother went for an assessment at Summit Psychological Associates ("SPA"), she did not disclose that she had overdosed on fentanyl. After the CSB caseworker informed SPA of Mother's overdose, Mother refused to continue services there.

{¶20} Five months later, Mother had another assessment at Lighthouse Family Services. It was recommended that she engage in drug treatment, case management, counseling, parenting education, and medication management. Mother began mental health counseling and case management services that same month at Portage Path Behavioral Health ("Portage Path"), but she revoked her release of information to CSB three months later. In addition, she refused to meet with the CSB caseworker or sign a new release of information. Mother did not participate in parenting education at any time during the case.

{¶21} Eventually, a couple weeks prior to the legal custody hearing, Mother signed a release of information for CSB to obtain only her treatment plan at Portage Path. Mother would not let the caseworker speak with her counselor. Mother testified that she submitted to mental health assessments with seven different professionals. She admitted that she did not engage in

recommended treatment because someone "intervened[d] into [her] assessment" each time. She was adamant that she did not want CSB involved in her mental health services. Mother testified that she was not currently in counseling and could not remember when she last engaged in it. She believed that seeing her primary care physician was sufficient to address any issues she might have.

{¶22} Mother submitted to a substance abuse assessment at Community Health Center very early in the case. She admitted during that assessment that she had recently overdosed on fentanyl. Based on her assessment, Mother was diagnosed with opiate use; marijuana use; and amphetamine use, in remission. Nevertheless, for the duration of the case, Mother consistently denied that she had substance abuse issues. She refused to discuss her substance abuse case plan objective with the caseworker, participate in drug treatment, or submit to oral swab drug screens.

{¶23} During the two months between the first and second days of the hearing, Mother appeared for a drug abuse assessment at Cleveland Clinic Akron General ("CCAG"). She submitted to three urine screens over a two-week period in November 2021, all of which were negative for drug use. CCAG recommended group therapy and outpatient drug treatment. Mother attended one session, asked for a letter stating that she does not use drugs, and never returned. CCAG closed her case for lack of participation.

{¶24} As to the basic needs component of her case plan, Mother made limited progress. She rarely allowed the caseworker or guardian ad litem into her home, and never when either appeared for an unannounced visit. Mother allowed the caseworker and guardian ad litem to visit her home immediately after the first day of the hearing. The parents' home was neat and clean at that time.

{¶25} Neither the agency caseworker nor the guardian ad litem addressed the parents' ability to financially support the children to meet their basic needs. Mother asserted that she and Father could provide for the girls, although Father's only income comes from social security disability and Mother is unemployed.

{¶26} So.M. and Sa.M. are happy and comfortable in Cousins' home where all their needs are met. The older child does well in school, participates in speech therapy, and attends monthly counseling sessions to address some behavioral issues and her adjustment to the current circumstances. The caseworker testified that So.M. is not in high need of ongoing counseling. Sa.M. has asthma and requires daily treatment. Cousins are committed to ensuring that the children continue to receive all treatment and services they require.

{¶27} Cousins, moreover, are committed to maintaining the children's bond with their parents. A.T. and M.T. provide Mother and Father with the opportunity to visit with the children at least twice a week and are open to increasing both the number of days and duration of visits, as appropriate. They allow Grandmother to supervise visits in her home and believe that overnight visits with Mother and Father would eventually be appropriate under Grandmother's supervision. Although she does not believe that Mother overdosed or otherwise has substance abuse issues, Grandmother testified that she would step in to protect the children if she believed that Mother's or Father's behavior was putting the children at risk.

{¶28} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by awarding legal custody of the children to A.T. and M.T. CSB demonstrated by a preponderance of the evidence that it is in the children's best interest to remain with Cousins who are willing and able to provide a permanent home for them. Cousins demonstrated a commitment to So.M. and Sa.M. during the

year and a half the children had been living in their home. Prior to that the girls frequently spent the weekends with Cousins. The children have flourished in the safe and stable environment provided by A.T. and M.T. Cousins ensure that all of the children's needs are met and that they have the opportunity for regular visitation with Mother and Father.

{¶29} Unfortunately, Mother and Father are not in a position to provide a safe and stable home for the girls. Father implicitly conceded as much when he withdrew his motion for legal custody and joined in CSB's motion. Although Mother loves the children, visits regularly, and interacts with them appropriately, she adamantly denies substance abuse issues despite earlier admitting to overdosing on fentanyl. Despite established mental health and substance abuse issues, Mother failed to engage in any counseling or other recommended treatment on a consistent basis. She never participated in parenting education. While the parents' home was clean and tidy during a recent home visit, Mother always refused to let the caseworker and guardian ad litem view the home unannounced. Accordingly, it is unknown whether the parents were able to maintain a clean home on a consistent basis. The children deserve the stability of an environment with caregivers who have demonstrated the ability to provide consistent safety and security. The agency demonstrated that A.T. and M.T. are capable of providing that, while Mother and Father are not. Under the circumstances, the juvenile court's finding that an award of legal custody to Cousins is in the children's best interest is not against the manifest weight of the evidence. Mother's assignment of error is overruled.

### III.

{¶30} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

NEIL AGARWAL, Attorney at Law, for Appellee.

CHRISTINE BOLLMAN, Guardian ad Litem.