[Cite as *In re A.D.*, 2026-Ohio-25.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.D.

C.A. No.    31443

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 22 08 0692

DECISION AND JOURNAL ENTRY

Dated: January 7, 2026

HENSAL, Judge.

{¶1}  Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that awarded legal custody of her child to Father.  This Court affirms.

I.

{¶2}  Mother and Father are the biological parents of A.D., born July 25, 2022.  Mere days after the child's birth, Summit County Children Services Board ("CSB" or "the agency") acquired emergency temporary custody.  The agency filed a complaint alleging that A.D. was dependent based on an unstable home environment and concerns regarding Mother's mental health.  The child's paternity was not established at that time.

{¶3}  Prior to the adjudicatory hearing, Mother relocated to Cleveland and began engaging in social services there.  Accordingly, CSB moved to transfer the case to the Cuyahoga County Juvenile Court.  Pending acceptance of the transfer, Summit County Juvenile Court adjudicated A.D. a dependent child, placed him in the temporary custody of CSB, granted Mother

twice weekly supervised visitation, and adopted the agency's case plan as an order. The case plan required Mother to obtain a psychological or psychiatric evaluation, follow all treatment recommendations, and demonstrate the ability to meet the infant's basic needs.

{¶4} Genetic testing excluded the only named alleged father as the child's biological father, and Mother declined to identify other possible fathers. Shortly thereafter, Cuyahoga County refused to accept transfer of the case because Mother was evasive about her address and circumstances. The matter proceeded in Summit County.

{¶5} Prior to the initial sunset date, Mother moved alternatively for legal custody or a first six-month extension of temporary custody. CSB moved for permanent custody. When the case was a year old, and before the sunset hearing occurred, Mother identified four possible fathers of the child. The juvenile court added all four men as parties and ordered genetic testing. Father timely complied and was determined to be A.D.'s biological father. CSB added Father to the case plan, requiring him to establish a relationship with the child and cooperate with the agency.

{¶6} Shortly before the permanent custody hearing, Father moved alternatively for legal custody to himself or the paternal grandmother ("Grandmother"). He also moved to continue the permanent custody hearing to allow him time to work on his case plan objectives in pursuit of reunification, and for completion of an Interstate Compact for the Placement of Children ("ICPC") assessment on him and his home in Alabama. In consideration of Father's recent establishment of paternity and some case plan progress by Mother, CSB withdrew its motion for permanent custody and moved for a first six-month extension of temporary custody. All parties agreed at a status hearing to the extension of temporary custody. Based on recently identified concerns, CSB amended the case plan to require Father to obtain substance use and mental health assessments, follow all evaluation recommendations, and submit to drug/alcohol screens.

{¶7} At the following review hearing, CSB orally moved for a second six-month extension of temporary custody, which the juvenile court granted. Father had moved to Ohio, found a job and appropriate housing, and was visiting regularly with A.D. Mother, on the other hand, continued to struggle with severe mental health issues and was charged with aggravated assault against Father's girlfriend.

{¶8} Prior to the final sunset date in the case, CSB filed a second motion for permanent custody. The agency asserted that Mother had moved to California and was not engaged in mental health services. CSB further asserted that Father lacked insight into his own substance abuse and Mother's mental health issues. Mother moved for legal custody.

{¶9} The guardian ad litem filed a report four months later in which she recommended that the juvenile court place A.D. in Father's legal custody under the protective supervision of CSB. She reported that, although she had some concerns about Father's lack of insight about his issues with alcohol, Father's home was appropriate; he was employed and engaged in counseling; and the child was closely bonded with Father and Grandmother who visited frequently. The guardian ad litem also reported that Mother, who was living in California and not compliant with her case plan objectives or taking advantage of her opportunities to visit remotely with the child, informed her that she supported an award of legal custody to Father. Shortly before the motion hearing, CSB withdrew its renewed motion for permanent custody and moved for temporary custody to Father under the agency's protective supervision. At the hearing, all parties present agreed and joined in CSB's motion which the juvenile court granted.

{¶10} Mother again moved for legal custody, while CSB moved for legal custody to Father and an order terminating the agency's protective supervision. In her report, the guardian ad litem opined that it was in A.D.'s best interest to remain in Father's custody, although she

recommended extending CSB's protective supervision for another 30 to 60 days based on a report that Father was again using alcohol. One day before the hearing, Mother moved for an ICPC assessment of her home in California.

{¶11} The juvenile court judge held an evidentiary hearing on the pending dispositional motions when the case had been pending for 31 months. The trial court granted CSB's motion, placed A.D. in Father's legal custody, terminated the agency's protective supervision, and closed the case. Mother timely appealed, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION TO GRANT LEGAL CUSTODY TO FATHER [ ] WITHOUT AN ORDER OF PROTECTIVE [SUPERVISION] WAS AGAINST THE MANIFEST WEIGHT OF [THE] EVIDENCE AND NOT IN THE BEST INTEREST OF THE CHILD.

{¶12} Mother argues that the juvenile court's judgment is against the manifest weight of the evidence. This Court disagrees.

{¶13} Our standard of review for such challenges is well settled:

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest.

(Internal citations and quotations omitted.) *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.).

{¶14} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment]

must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶15} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 2016-Ohio-1330, ¶ 12 (9th Dist.). The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.). In that regard, the juvenile court is guided by the best interest factors enumerated in Revised Code Section 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.).

{¶16} The best interest factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in Section 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.). In addition, the juvenile court may also look to the best interest factors in Section 3109.04(F)(1) for guidance. *In re K.A.*, 2017-Ohio-1, ¶ 17 (9th Dist.). While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶17} Mother focuses her argument on the impropriety of Father as a legal custodian, rather than on her ability to provide a safe and stable home for the child. In fact, during her case in chief, Mother testified that she hoped to obtain legal custody "in the future[,]" and that what she was really pursuing at the time of the hearing was "physical visitation" with A.D. in California. Moreover, Mother had not consistently engaged in case plan services during the past two and a half years, moved out of Summit County early in the case, subsequently relocated to California, and failed to maintain contact with the caseworker and guardian ad litem who were accordingly unable to verify her claims of employment and housing at the hearing. In two and a half years, Mother had very little contact with A.D., and the two did not share a bond. Under these circumstances, Mother failed to demonstrate that an award of legal custody to Mother was in the child's best interest.

{¶18} On the other hand, CSB proved by a preponderance of the evidence that awarding legal custody of A.D. to Father was in his best interest. The child spent five days with Mother after birth before CSB removed him from her care. A.D. remained in the agency's temporary custody for the next 27 months, after which the parties agreed to his placement in Father's care under agency protective supervision.

{¶19} A.D. was conceived after Mother and Father met once and had no further relationship. Mother did not identify Father as a possible biological father until one year into the case. Father quickly submitted to genetic testing and began cooperating with CSB, the guardian ad litem, and the juvenile court immediately upon establishing paternity. Father's visits went well and were expanded to encompass overnights. A.D. developed a close bond with Father, his girlfriend, and Grandmother.

{¶20} Father demonstrated the ability to provide for the child's basic needs. His home is safe and appropriate. Father is employed full-time and has the financial means to provide for the family. Father's girlfriend and Grandmother provide care for A.D. while Father works. The guardian ad litem supported the child's ongoing placement with Father, opining that custody to Father was in two-year-old A.D.'s best interest.

{¶21} Based on a thorough review of the record, this is not the exceptional case where the trier of fact clearly lost its way and created a manifest miscarriage of justice by awarding legal custody to Father. As soon as he was notified of the possibility that he was the child's biological parent, Father submitted to genetic testing. Once paternity was established, Father immediately took an active role in developing a relationship with the child. He moved from Alabama to Ohio to be closer to A.D. and pursue reunification. Father at all times was cooperative with CSB and the guardian ad litem and compliant with court orders. Father demonstrated a commitment to the child and the ability to meet his basic needs. A.D. is comfortable in Father's home and strongly bonded with other household members, as well as Grandmother who visits frequently. Accordingly, the juvenile court's finding that an award of legal custody to Father was in the child's best interest is not against the manifest weight of the evidence.

{¶22} To the extent that Mother argues that the juvenile court erred by failing to impose an additional term of protective supervision, she has not demonstrated error. The child was under the agency's protective supervision for four months prior to the final hearing, and no concerns compelled the child's removal from Father's care. The guardian ad litem suggested merely another 30 to 60 days of protective supervision but otherwise supported A.D.'s continued placement with Father. Father was under the supervision of a county probation officer who continued to monitor his sobriety. A.D. was thriving in a parent's home. After two and a half years, the child deserved

permanency. Mother failed to demonstrate how delaying closure of the case was necessary to meet the best interest of the child. Mother's assignment of error is overruled.

III.

{¶23} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

DAVID M. LOWRY, Attorney at Law, for Appellee.

SHUBHRA AGARWAL, Guardian ad Litem.